Justice Souter
delivered the opinion of the Court.
The question is whether want of a federal cause of action to try claims of title to land obtained at a federal tax sale precludes removal to federal court of a state action with nondiverse parties raising a disputed issue of federal title law. We answer no, and hold that the national interest in providing a federal forum for federal tax litigation is sufficiently substantial to support the exercise of federal-question jurisdiction over the disputed issue on removal, which would not distort any division of labor between the state and federal courts, provided or assumed by Congress.
h-H
In 1994, the Internal Revenue Service seized Michigan real property belonging to petitioner Grable & Sons Metal Products, Inc., to satisfy Grable’s federal tax delinquency. Title 26 U. S. C. § 6335 required the IRS to give notice of the seizure, and there is no dispute that Grable received actual notice by certified mail before the IRS sold the property to respondent Darue Engineering & Manufacturing. Although Grable also received notice of the sale itself, it did not exercise its statutory right to redeem the property within 180 days of the sale, § 6337(b)(1), and after that period *311 had passed, the Government gave Darue a quitclaim deed, §6339.
Five years later, Grable brought a quiet title action in state court, claiming that Darue’s record title was invalid because the IRS had failed to notify Grable of its seizure of the property in the exact manner required by § 6335(a), which provides that written notice must be “given by the Secretary to the owner of the property [or] left at his usual place of abode or business.” Grable said that the statute required personal service, not service by certified mail.
Darue removed the ease to Federal District Court as presenting a federal question, because the claim of title depended on the interpretation of the notice statute in the federal tax law. The District Court declined to remand the case at Grable’s behest after finding that the “claim does pose a ‘significant question of federal law,’ ” Tr. 17 (Apr. 2, 2001), and ruling that Grable’s lack of a federal right of action to enforce its claim against Darue did not bar the exercise of federal jurisdiction. On the merits, the court granted summary judgment to Darue, holding that although § 6335 by its terms required personal service, substantial compliance with the statute was enough. 207 F. Supp. 2d 694 (WD Mich. 2002).
The Court of Appeals for the Sixth Circuit affirmed. 377 F. 3d 592 (2004). On the jurisdictional question, the panel thought it sufficed that the title claim raised an issue of federal law that had to be resolved, and implicated a substantial federal interest (in construing federal tax law). The court went on to affirm the District Court’s judgment on the merits. We granted certiorari on the jurisdictional question alone,[1] 543 U. S. 1042 (2005), to resolve a split within the Courts of Appeals on whether Merrell Dow Pharmaceuticals Inc. v. Thompson, 478 U. S. 804 (1986), always requires *312 a federal cause of action as a condition for exercising federal-question jurisdiction.[2] We now affirm.
h-H
Darue was entitled to remove the quiet title action if Grable could have brought it in federal «¿strict court originally, 28 U. S. C. § 1441(a), as a civil action “arising under the Constitution, laws, or treaties of the United States,” §1331. This provision for federal-question jurisdiction is invoked by and large by plaintiffs pleading a cause of action created by federal law (e. g., claims under 42 U. S. C. § 1983). There is, however, another longstanding, if less frequently encountered, variety of federal “arising under” jurisdiction, this Court having recognized for nearly 100 years that in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues. E. g., Hopkins v. Walker, 244 U. S. 486, 490-491 (1917). The doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues, see ALI, Study of the Division of Jurisdiction Between State and Federal Courts 164-166 (1968).
The classic example is Smith v. Kansas City Title & Trust Co., 255 U. S. 180 (1921), a suit by a shareholder claiming that the defendant corporation could not lawfully buy certain bonds of the National Government because their issuance was unconstitutional. Although Missouri law provided the cause of action, the Court recognized federal-question jurisdiction because the principal issue in the ease was the federal constitutionality of the bond issue. Smith thus held, in a *313 somewhat generous statement of the scope of the doctrine, that a state-law claim could give rise to federal-question jurisdiction so long as it “appears from the [complaint] that the right to relief depends upon the construction or application of [federal law].” Id., at 199.
The Smith statement has been subject to some trimming to fit earlier and later cases recognizing the vitality of the basic doctrine, but shying away from the expansive view that mere need to apply federal law in a state-law claim will suffice to open the “arising under” door. As early as 1912, this Court had confined federal-question jurisdiction over state-law claims to those that “really and substantially in-volv[e] a dispute or controversy respecting the validity, construction or effect of [federal] law.” Shulthis v. McDougal, 225 U. S. 561, 569. This limitation was the ancestor of Justice Cardozo’s later explanation that a request to exercise federal-question jurisdiction over a state action calls for a “common-sense accommodation of judgment to [the] kaleidoscopic situations” that present a federal issue, in “a selective process which picks the substantial causes out of the web and lays the other ones aside.” Gully v. First Nat. Bank in Meridian, 299 U. S. 109, 117-118 (1936). It has in fact become a constant refrain in such cases that federal jurisdiction demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum. E. g., Chicago v. International College of Surgeons, 522 U. S. 156, 164 (1997); Merrell Dow, supra, at 814, and n. 12; Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal., 463 U. S. 1, 28 (1983).
But even when the state action discloses a contested and substantial federal question, the exercise of federal jurisdiction is subject to a possible veto. For the federal issue will ultimately qualify for a federal forum only if federal jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts gov *314 erning the application of § 1331. Thus, Franchise Tax Bd. explained that the appropriateness of a federal forum to hear an embedded issue could be evaluated only after considering the “welter of issues regarding the interrelation of federal and state authority and the proper management of the federal judicial system.” Id., at 8. Because arising-under jurisdiction to hear a state-law claim always raises the possibility of upsetting the state-federal line drawn (or- at least assumed) by Congress, the presence of a disputed federal issue and the ostensible importance of a federal forum are never necessarily dispositive; there must always be an assessment of any disruptive portent in exercising federal jurisdiction. See also Merrell Dow, 478 U. S., at 810.
These considerations have kept us from stating a “single, precise, all-embracing” test for jurisdiction over federal issues embedded in state-law claims between nondiverse parties. Christianson v. Colt Industries Operating Corp., 486 U. S. 800, 821 (1988) (Stevens, J., concurring). We have not kept them out simply because they appeared in state raiment, as Justice Holmes would have done, see Smith, supra, at 214 (dissenting opinion), but neither have we treated “federal issue” as a password opening federal courts to any state action embracing a point of federal law. Instead, the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congres-sionally approved balance of federal and state judicial responsibilities.
Ill
A
This case warrants federal jurisdiction. Grable’s state complaint must specify “the facts establishing the superiority of [its] claim,” Mich. Ct. Rule 3.411(B)(2)(c) (West 2005), and Grable has premised its superior title claim on a failure by the IRS to give it adequate notice, as defined by federal *315 law. Whether Grable was given notice within the meaning of the federal statute is thus an essential element of its quiet title claim, and the meaning of the federal statute is actually in dispute; it appears to be the only legal or factual issue contested in the case. The meaning of the federal tax provision is an important issue of federal law that sensibly belongs in a federal court. The Government has a strong interest in the “prompt and certain collection of delinquent taxes,” United States v. Rodgers, 461 U. S. 677, 709 (1983), and the ability of the IRS to satisfy its claims from the property of delinquents requires clear terms of notice to allow buyers like Darue to satisfy themselves that the Service has touched the bases necessary for good title. The Government thus has a direct interest in the availability of a federal forum to vindicate its own administrative action, and buyers (as well as tax delinquents) may find it valuable to come before judges used to federal tax matters. Finally, because it will be the rare state title case that raises a contested matter of federal law, federal jurisdiction to resolve genuine disagreement over federal tax title provisions will portend only a microscopic effect on the federal-state division of labor. See n. 3, infra.
This conclusion puts us in venerable company, quiet title actions having been the subject of some of the earliest exercises of federal-question jurisdiction over state-law claims. In Hopkins, 244 U. S., at 490-491, the question was federal jurisdiction over a quiet title action based on the plaintiffs’ allegation that federal mining law gave them the superior claim. Just as in this case, “the facts showing the plaintiffs’ title and the existence and invalidity of the instrument or record sought to be eliminated as a cloud upon the title are essential parts of the plaintiffs’ cause of action.”[3] Id., at *316 490. As in this case again, “it is plain that a controversy respecting the construction and effect of the [federal] laws is involved and is sufficiently real and substantial.” Id., at 489. This Court therefore upheld federal jurisdiction in Hopkins, as well as in the similar quiet title matters of Northern Pacific R. Co. v. Soderberg, 188 U. S. 526, 528 (1903), and Wilson Cypress Co. v. Del Pozo y Marcos, 236 U. S. 635, 643-644 (1915). Consistent with those eases, the recognition of federal jurisdiction is in order here.
B
Merrell Dow Pharmaceuticals Inc. v. Thompson, 478 U. S. 804 (1986), on which Grable rests its position, is not to the contrary. Merrell Dow considered a state tort claim resting in part on the allegation that the defendant drug company had violated a federal misbranding prohibition, and was thus presumptively negligent under Ohio law. Id., at 806. The Court assumed that federal law would have to be applied to resolve the claim, but after closely examining the strength of the federal interest at stake and the implications of opening the federal forum, held federal jurisdiction unavailable. Congress had not provided a private federal cause of action for violation of the federal branding requirement, and the Court found “it would . .. flout, or at least undermine, congressional intent to conclude that federal courts might nevertheless exercise federal-question jurisdiction and provide remedies for violations of that federal statute solely because the violation ... is said to be a . .. ‘proximate cause’ under state law.” Id., at 812.
*317 Because federal law provides for no quiet title action that could be brought against Darue,[4] Grable argues that there can be no federal jurisdiction here, stressing some broad language in Merrell Dow (including the passage just quoted) that on its face supports Grable’s position, see Note, Mr. Smith Goes to Federal Court: Federal Question Jurisdiction over State Law Claims Post -Merrell Dow, 115 Harv. L. Rev. 2272, 2280-2282 (2002) (discussing split in Courts of Appeals over private right of action requirement after Merrell Dow). But an opinion is to be read as a whole, and Merrell Dow cannot be read whole as overturning decades of precedent, as it would have done by effectively adopting the Holmes dissent in Smith, see supra, at 314, and converting a federal cause of action from a sufficient condition for federal-question jurisdiction[5] into a necessary one.
In the first place, Merrell Dow disclaimed the adoption of any bright-line rule, as when the Court reiterated that “in exploring the outer reaches of § 1331, determinations about federal jurisdiction require sensitive judgments about congressional intent, judicial power, and the federal system.” 478 U. S., at 810. The opinion included a lengthy footnote explaining that questions of jurisdiction over state-law claims require “careful judgments,” id., at 814, about the “nature of the federal interest at stake,” id., at 814, n. 12 (emphasis deleted). And as a final indication that it did not mean to make a federal right of action mandatory, it expressly approved the exercise of jurisdiction sustained in Smith, despite the want of any federal cause of action available to Smith's shareholder plaintiff. 478 U. S., at 814, n. 12. *318 Merrell Dow then, did not toss out, but specifically retained, the contextual enquiry that had been Smith’s hallmark for over 60 years. At the end of Merrell Dow, Justice Holmes was still dissenting.
Accordingly, Merrell Dow should be read in its entirety as treating the absence of a federal private right of action as evidence relevant to, but not dispositive of, the “sensitive judgments about congressional intent” that § 1331 requires. The absence of any federal cause of action affected Merrell Dow’s result two ways. The Court saw the fact as worth some consideration in the assessment of substantiality. But its primary importance emerged when the Court treated the combination of no federal cause of action and no preemption of state remedies for misbranding as an important clue to Congress’s conception of the scope of jurisdiction to be exercised under § 1331. The Court saw the missing cause of action not as a missing federal door key, always required, but as a missing welcome mat, required in the circumstances, when exercising federal jurisdiction over a state misbrand-ing action would have attracted a horde of original filings and removal cases raising other state claims with embedded federal issues. For if the federal labeling standard without a federal cause of action could get a state claim into federal court, so could any other federal standard without a federal cause of action. And that would have meant a tremendous number of cases.
One only needed to consider the treatment of federal violations generally in garden variety state tort law. “The violation of federal statutes and regulations is commonly given negligence per se effect in state tort proceedings.”[6] Re *319 statement (Third) of Torts § 14, Reporters’ Note, Comment a, p. 195 (Tent. Draft No. 1, Mar. 28, 2001). See also W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts §36, p. 221, n. 9 (5th ed. 1984) (“[T]he breach of a federal statute may support a negligence per se claim as a matter of state law” (collecting authority)). A general rule of exercising federal jurisdiction over state claims resting on federal mislabeling and other statutory violations would thus have heralded a potentially enormous shift of traditionally state cases into federal courts. Expressing concern over the “increased volume of federal litigation,” and noting the importance of adhering to “legislative intent,” Merrell Dow thought it improbable that the Congress, having made no provision for a federal cause of action, would have meant to welcome any state-law tort case implicating federal law “solely because the violation of the federal statute is said to [create] a rebuttable presumption [of negligence] . . . under state law.” 478 U. S., at 811-812 (internal quotation marks omitted). In this situation, no welcome mat meant keep out. Merrell Dow’s analysis thus fits within the framework of examining the importance of having a federal forum for the issue, and the consistency of such a forum with Congress’s intended division of labor between state and federal courts.
As already indicated, however, a comparable analysis yields a different jurisdictional conclusion in this case. Although Congress also indicated ambivalence in this case by providing no private right of action to Grable, it is the rare state quiet title action that involves contested issues of federal law, see n. 3, supra. Consequently, jurisdiction over actions like Grable’s would not materially affect, or threaten to affect, the normal currents of litigation. Given the absence of threatening structural consequences and the clear interest the Government, its buyers, and its delinquents have in the availability of a federal forum, there is no good reason to *320 shirk from federal jurisdiction over the dispositive and contested federal issue at the heart of the state-law title claim.[7]
IV
The judgment of the Court of Appeals, upholding federal jurisdiction over Grable’s quiet title action, is affirmed.

It is so ordered.

 Accordingly, we have no occasion to pass upon the proper interpretation of the federal tax provision at issue here.

 Compare Seinfeld v. Austen, 39 F. 3d 761, 764 (CA7 1994) (finding that federal-question jurisdiction over a state-law claim requires a parallel federal private right of action), with Ormet Corp. v. Ohio Power Co., 98 F. 3d 799, 806 (CA4 1996) (finding that a federal private action is not required).

 The quiet title eases also show the limiting effect of the requirement that the federal issue in a state-law claim must actually be in dispute to justify federal-question jurisdiction. In Shulthis v. McDougal, 225 U. S. 561 (1912), this Court found that there was no federal-question jurisdiction *316 to hear a plaintiff’s quiet title claim in part because the federal statutes on which title depended were not subject to “any controversy respecting their validity, construction, or effect.” Id., at 570. As the Court put it, the requirement of an actual dispute about federal law was “especially” important in “suit[s] involving rights to land acquired under a law of the United States,” because otherwise “every suit to establish title to land in the central and western states would so arise [under federal law], as all titles in those States are traceable back to those laws.” Id., at 569-570.

 Federal law does provide a quiet title cause of action against the Federal Government. 28 U. S. C. § 2410. That right of action is not relevant here, however, because the Federal Government no longer has any interest in the property, having transferred its interest to Darue through the quitclaim deed.

 For an extremely rare exception to the sufficiency of a federal right of action, see Shoshone Mining Co. v. Rutter, 177 U. S. 505, 507 (1900).

 Other jurisdictions treat a violation of a federal statute as evidence of negligence or, like Ohio itself in Merrell Dow Pharmaceuticals Inc. v. Thompson, 478 U. S. 804 (1986), as creating a rebuttable presumption of negligence. Restatement §14, Reporters’ Note, Comment c, at 196. Either approach could still implicate issues of federal law.

 At oral argument Grable’s counsel espoused the position that after Merrell Dow, federal-question jurisdiction over state-law claims absent a federal right of action could be recognized only where a constitutional issue was at stake. There is, however, no reason in text or otherwise to draw such a rough line. As Merrell Dow itself suggested, constitutional questions may be the more likely ones to reach the level of substantiality that can justify federal jurisdiction. 478 U. S., at 814, n. 12. But a flat ban on statutory questions would mechanically exclude significant questions of federal law like the one this case presents.