

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-23-2006

# PNC Bank NA v. PPL Elec Util Corp

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-3109

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"PNC Bank NA v. PPL Elec Util Corp" (2006). *2006 Decisions.* Paper 844.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/844

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 05-3109

PNC BANK, N.A., as Trustee for the Tunnelton Mining Company
Black Lung Benefit Trust on behalf of and for the benefit of the
former employees of the Tunnelton Mining Company Marion Mine

v.

PPL ELECTRIC UTILITIES CORPORATION,
f/k/a PENNSYLVANIA POWER & LIGHT COMPANY;
PENNSYLVANIA MINES, LLC, f/k/a
PENNSYLVANIA MINES CORPORATION,
                                        Appellants

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 03-cv-01789)
District Judge: Honorable Donetta W. Ambrose

Argued May 18, 2006

Before:  RENDELL and VAN ANTWERPEN, Circuit Judges,
and ACKERMAN*, District Judge.

(Filed June 23, 2006)

_____

* Honorable Harold A. Ackerman, Senior District Judge for the District of New Jersey,
sitting by designation.

David J. Laurent    **[ARGUED]**
Babst, Calland, Clements & Zomnir
Two Gateway Center, 8th Floor
Pittsburgh, PA 15222
  *Counsel for Appellants*

Robert V. Campedel    **[ARGUED]**
Mark A. Willard
Eckert, Seamans, Cherin & Mellott
600 Grant Street, 44th Floor
Pittsburgh, PA 15219
  *Counsel for Appellee*

---

OPINION OF THE COURT

---

RENDELL, <u>Circuit Judge</u>.

## I.

This appeal arises from a grant of summary judgment against PPL Electric Utilities Corporation ("PPL") and Pennsylvania Mines, LLC ("PA Mines") (collectively "Appellants") and in favor of PNC Bank ("PNC"). PNC is Trustee of the Tunnelton Mining Company Black Lung Benefit Trust ("Tunnelton Trust"). On May 31, 2001, PA Mines demanded a trust distribution of "excess assets" of the Tunnelton Trust under section 501(c)(21) of the Internal Revenue Code. PNC filed an action for declaratory judgment in the Court of Common Pleas for Allegheny County, Pennsylvania, seeking a declaration that the Tunnelton Trust does not contain "excess assets" that can be used to pay for retiree health care benefits under 26 U.S.C. § 501(c)(21). PA Mines removed the

2

case to federal court and filed a two-count counterclaim for (1) breach of fiduciary duty for failure to pay the "excess assets" and (2) allegedly taking excessive fees for administration of the Trust assets.[1]  PNC filed a motion for summary judgment, arguing that there were no "excess assets" in the Tunnelton Trust under § 501(c)(21) and, as a consequence, that PNC had not breached its fiduciary duty by refusing to make payments.  The District Court granted PNC's motion for summary judgment based upon its determination that the Tunnelton Trust did not contain excess assets under § 501(c)(21).

After the District Court granted summary judgment, PA Mines and PPL filed a motion for leave to amend their counterclaim.  Specifically, Appellants sought to amend their counterclaim to add a new claim for breach of fiduciary duty against PNC on behalf of and for the benefit of the former employees of the Tunnelton Mining Company's Marion Mine.  The District Court did not exercise its discretion to permit PPL and PA Mines to amend their complaint, finding that they lacked standing to bring their new claim.[2]

## II.

We exercise plenary review over the District Court's grant of summary judgment,

_____

[1]After discovery, PA Mines withdrew Count II of the counterclaim with regard to PNC's fees.

[2]Though not reaching the issue, the District Court also noted that it was doubtful that federal subject matter jurisdiction existed over the proposed state-law breach of fiduciary duty claim.

and apply the same standard the District Court was required to apply. *Stratton v. E.I. DuPont DeNemours & Co.*, 363 F.3d 250, 253 (3d Cir. 2004). Summary judgment is appropriate if there are no genuine issues of material fact presented and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). We resolve all factual doubts and draw all reasonable inferences in favor of the nonmoving party. *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 140 (3d Cir. 2004). We review the District Court's denial of leave to amend for abuse of discretion. *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 116 (3d Cir. 2003); *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000).

III.

The Federal Black Lung Benefits Act ("BLBA"), 30 U.S.C. §§ 901, *et seq*., obligates coal mine operators to provide certain benefits to their employees who are stricken with pneumoconiosis, also known as black lung disease, due to exposure to coal dust during their employment. PA Mines (an indirect subsidiary of PPL) is subject to the BLBA. Prior to September 25, 1992, PA Mines owned and operated several mining companies, one of which was the Tunnelton Mining Company ("TMC"). During the course of operating its mining companies, PA Mines provided BLBA benefits for its employees through a Black Lung Benefits Trust entitled PMC Black Lung Benefit Trust ("PMC Trust"). Creating such a trust is one of several options available to mine operators under federal regulations which seek to secure the payment of benefits as a

4

result of the long-term nature of black lung disease and the threat of insolvency in the mining business.

In 1991, PA Mines decided to get out of the mining business and either closed or sold its mines and mining companies, but remains in existence to satisfy certain post-closing liabilities and obligations. On September 25, 1992, as part of its coal mining divestiture, PA Mines entered into a Stock Purchase Agreement with Mon Valley Steel Co., Inc., wherein PA Mines sold and Mon Valley purchased all of the capital stock of TMC. As part of this transaction, PA Mines agreed to continue to pay health and accident insurance benefits for retirees of TMC pursuant to the Coal Industry Retiree Health Benefits Act (commonly known as the Rockefeller Act), 26 U.S.C. §§ 9701, *et seq*. As part of the sale of all of the stock of TMC to Mon Valley, TMC established the Tunnelton Trust for purposes of satisfying its BLBA obligations to miners who were employees of TMC prior to the sale and either retired or continued on as employees after the sale and later retired. PNC was made the trustee for the Tunnelton Trust. $8,415,000 was transferred from the PMC Trust to the Tunnelton Trust based upon a liability study performed by PA Mines' actuaries, pursuant to the terms of both the Stock Purchase Agreement and the Tunnelton Trust Agreement.

After the September 25, 1992 transaction, Congress amended section 501(c)(21) (effective October 24, 1992) to allow the payment of "excess assets" from the assets of black lung benefit trusts to employers for the payment of accident or health benefit

premiums of retired miners as required by the Rockefeller Act.

TMC, which was charged with processing the BLBA claims of its employees and replenishing the funds which comprise the assets of the Tunnelton Trust if necessary, eventually terminated its mining operations and filed for bankruptcy in 1994.

On or about May 31, 2001, PA Mines demanded that PNC, as Trustee of the Tunnelton Trust, pay $3,157,230 of the Tunnelton Trust assets to PA Mines under section 501(c)(21)(A)(i)(IV) of the Internal Revenue Code for the purpose of reimbursing PA Mines for payments it had made under the Rockefeller Act, with respect to non-black lung health benefits for TMC's and PA Mines' retired miners. PNC refused PA Mines' request on the grounds that IRC section 501(c)(21) only permits "excess" trust assets to be used for payment of such benefits. PNC contends that there are no "excess assets" of the Trust available to pay PA Mines' demand.

In light of, among other things, the continuing demand of PA Mines for payment, the bankruptcy of TMC, and the fact that no "Employer" exists to contest PA Mines' demands or to replenish the assets of the Tunnelton Trust in the event of depletion, PNC, as Trustee of the Tunnelton Trust, brought an action for declaratory judgment in the Court of Common Pleas for Allegheny County, Pennsylvania. On November 20, 2003, PA Mines and PPL removed the action to federal court and filed counterclaims against

PNC.[3]

On October 15, 2004, PNC moved for summary judgment. On February 22, 2005, the District Court granted summary judgment for PNC, declaring that there are no excess assets of the Tunnelton Trust under section 501(c)(21) of the IRC and that PNC is not required to pay any portion of the Trust's assets to PA Mines or PPL. The District Court also dismissed the counterclaims against PNC, but afforded PA Mines and PPL leave to file a motion to amend their counterclaim to add a claim under federal law for breach of fiduciary duty. On March 22, 2005, PA Mines and PPL moved for leave to file an amended counterclaim. Specifically, Appellants sought to amend their counterclaim to add a new claim for breach of fiduciary duty against PNC on behalf of and for the benefit of the former employees of the TMC Marion Mine. The District Court denied PA Mines' and PPL's motion, finding that they did not have standing to bring this new claim.

IV.

---

[3]We have subject matter jurisdiction over this claim brought under Pennsylvania's declaratory judgment statute, and originally in Pennsylvania state court, pursuant to 28 U.S.C. § 1331. We conclude that PNC's state-law action gives rise to federal-question jurisdiction because "it appears from the complaint that the right to relief depends upon the construction or application of federal law." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 125 S. Ct. 2363, 2367 (2005) (internal brackets and quotation omitted). We find that PNC's state-law declaratory judgment act claim raises a substantial federal question– the interpretation of section 501(c)(21) of the Internal Revenue Code– over which the District Court properly exercised removal jurisdiction. Our jurisdiction is "consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331." *Id.*

In granting summary judgment, the District Court first addressed the narrow issue of whether there were any "excess assets" in the Tunnelton Trust under section 501(c)(21)(C)(ii) and found that there were not. This was based upon its conclusion that because the Tunnelton Trust's first taxable year did not end until March 31, 1993– more than five months after the enactment of section 501(c)(21)(C)– the calculation of "excess assets" resulted in a finding of *no* excess assets. The District Court reasoned that the Tunnelton Trust did not have any taxable years ending *prior* to the date of enactment and, thus, could not have any excess assets under the (C)(ii) calculation.[4] Because the lesser of the section 501(c)(21)(C)(i) and (ii) amounts is zero, there are no excess assets in the Tunnelton Trust available to PA Mines. The District Court found that PNC was also entitled to summary judgment on PA Mines' counterclaim for breach of fiduciary duty because there could be no breach of fiduciary duty for failure to disburse excess

---

[4]The excess asset calculation relies on the following mathematical calculation:

(ii) the excess (if any) of –

> (I) the sum of a similar excess determined *as of the close of the last taxable year ending before the date of the enactment of this subparagraph* plus earnings thereon as of the close of the taxable year preceding the taxable year involved, over
>
> (II) the aggregate payments described in subparagraph (A)(i)(IV) made from the trust during all taxable years beginning after the date of the enactment of this subparagraph.

26 U.S.C. § 501(c)(21)(C)(ii) (emphasis added).

assets since there were no "excess assets" in the Tunnelton Trust for PNC to disburse.

Appellants do not challenge this calculation, but urge that the Tunnelton Trust is not a "typical" new trust for purposes of the Act. Unlike typical trusts, the Tunnelton Trust assumed all of the PMC Trust's assets and liabilities with respect to Tunnelton's former employees and should be held to be a *de facto* continuation of the PMC Trust. So, they contend, the § 501(c)(21)(C)(ii) "excess assets" calculation should be made with reference to the status of assets and liabilities in the PMC Trust at the close of the last taxable year that ended before § 501(c)(21)(C) was enacted, 1991.

The District Court rejected this theory and concluded that the Tunnelton Trust and PMC Trusts "are, and always have been, separate and distinct entities." Dist. Ct. Op. at 13, app. 17. "For example," the District Court noted, "each trust has a different tax identification number, and thus, each is a separate taxpayer for purposes of federal tax law. The two trusts also have different taxable years. The Stock Purchase and Trust Agreements further indicate that Defendants intended the Tunnelton Trust to be a new and separate entity." *Id.* (citations omitted). The District Court concluded, "There is nothing in section 501(c)(21) or elsewhere that would even remotely suggest that Congress intended the term "trust" to include any other entity, especially a separate and distinct taxpayer such as the [PMC] Trust. Thus, under the plain language of the statute, only the Tunnelton Trust is relevant." *Id.*

We adopt the thoughtful analysis of the District Court and its legal conclusion on

9

this issue. We will affirm the District Court's rulings as to both PNC's declaratory judgment action and the original counterclaims.

V.

After the District Court granted PNC's motion for summary judgment and simultaneously dismissed Appellants' original counterclaims, Appellants filed a motion for leave to file an amended counterclaim. In their original counterclaim, Appellants alleged breach of fiduciary duty against PNC, as Trustee of the Tunnelton Trust, based upon PNC's refusal to hand over Trust assets to Appellants to cover Appellants' liabilities for non-black lung liabilities. When this counterclaim was rejected, Appellants sought to amend their counterclaim to allege that PNC breached its fiduciary duty to beneficiaries of the Trust by making payments for medical treatments to former Tunnelton miners which Appellants allege were not related to black lung disease. The District Court denied this motion, finding that Appellants lacked standing to bring the claim. It reasoned that Appellants failed to allege any actual or threatened injury from PNC's alleged breach of fiduciary duty and had not identified any interest they have in the Trust assets except as potential recipients of "excess assets" for purposes of reimbursing them for accident or health benefits paid for retired miners. Because the District Court had concluded that there were not– and could not be– any such excess assets in the Tunnelton Trust, it found that Appellants had no interest in the Trust assets and could not be harmed by PNC's alleged improper payments. Accordingly, the District

10

Court concluded, Appellants lack Article III standing to bring their proposed amended counterclaim.

The District Court also concluded that, even if Appellants could establish an injury that would satisfy the constitutional standing requirements, they cannot establish prudential standing. The prudential limitations "ensure that only parties who can best pursue a particular claim will gain access to the courts." *Oxford Assocs. v. Waste Sys. Auth. of E. Montgomery County*, 271 F.3d 140, 145 (3d Cir. 2001). Here, the District Court concluded that Appellants were not the best parties to represent the interests of the former miners who are entitled to Black Lung benefits.[5]

On appeal, Appellants devote only a single paragraph (two sentences) to this issue. Appellants essentially concede that, if we find that the Tunnelton Trust has no "excess assets" then they do not have standing. Appellants argue only "if this Court reverses the District Court on the Section 501(c)(21)(C)(ii) issue, [Appellants] clearly will be potential beneficiaries of the Tunnelton Trust and, therefore, will have standing to complain about PNC's waste of trust assets." Appellants' Br. at 25.

We find no error in the District Court's analysis and conclude that Appellants, indeed, lack standing to bring their proposed amended counterclaim.

VI.

---

[5]The District Court also concluded that Appellants do not have third-party standing to pursue their proposed breach of fiduciary duty claim on behalf of the Trust and/or the former Tunnelton miners who are beneficiaries of the Trust.

11

Accordingly, for the reasons set forth above, we will affirm the District Court's grant of summary judgment as to both PNC's declaratory judgment action and the original counterclaims. We will also affirm the District Court's denial of Appellants' motion to amend their counterclaim for lack of standing.