**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 5, 2012

No. 11-10759

Lyle W. Cayce
Clerk

AMERICAN AIRLINES, INCORPORATED,

Plaintiff-Appellee

v.

SABRE, INCORPORATED; SABRE HOLDINGS CORPORATION; SABRE
TRAVEL INTERNATIONAL LIMITED,

Defendants-Appellants

Appeal from the United States District Court
for the Northern District of Texas

Before HIGGINBOTHAM, HAYNES, and HIGGINSON, Circuit Judges.

HIGGINSON, Circuit Judge:

Defendants-Appellants Sabre Inc., Sabre Holdings Corporation, and Sabre
Travel International Limited (collectively, "Sabre") appeal the district court's
award of attorney's fees to Plaintiff-Appellee American Airlines, Inc.
("American") pursuant to 28 U.S.C. § 1447(c).[1]  We AFFIRM the district court's

---

[1] 28 U.S.C. § 1447(c) states:

(c) A motion to remand the case on the basis of any defect other than lack of
subject matter jurisdiction must be made within 30 days after the filing of the
notice of removal under section 1446(a).  If at any time before final judgment it
appears that the district court lacks subject matter jurisdiction, the case shall
be remanded.  An order remanding the case may require payment of just costs
and any actual expenses, including attorney fees, incurred as a result of the
removal.  A certified copy of the order of remand shall be mailed by the clerk to

No. 11-10759

ruling, finding that the district court did not abuse its discretion in awarding attorney's fees to American based on its assessment that Defendants-Appellants Sabre did not have objectively reasonable grounds to believe removal of the case from state court to federal district court was legally proper.

## FACTS AND PROCEEDINGS

Defendants-Appellants Sabre own and operate a computerized reservation system, known as a Global Distribution System ("GDS"), which is used by travel agents, corporate customers, and the traveling public to search, price, book, and ticket travel services offered by airlines, hotels, and other travel-related entities. In 1998, American and Sabre entered into a Participating Carrier Distribution and Services Agreement which generally set forth the terms and conditions under which Sabre would make American's fare and schedule information available to Sabre GDS subscribers. Recently, however, the business relationship between American and Sabre has become strained. American has incorporated newer, lower-cost technologies into the distribution of its products and services, and this "direct connection" system presents a competitive threat to Sabre's GDS business.

American filed a lawsuit against Travelport, Inc. in the District Court of Tarrant County, Texas, 67th Judicial District in November 2010 and later added Sabre as defendants. In this state court lawsuit, American alleged state-law causes of action for breach of contract and tortious interference with prospective business relations and sought a temporary restraining order and temporary injunction against Sabre. Specifically, American alleged that Sabre had been biasing American's fares and schedules in Sabre's displays, causing American to lose business to competing airlines by "misleading the public into believing

---

the clerk of the State court. The State court may thereupon proceed with such case.

2

that American's services either no longer existed or were not competitive with options offered by other air carriers" and that Sabre had more than doubled the fees it charged to distribute American flight/fare data in breach of the parties' contract.

In April 2011, American filed a lawsuit against Travelport Limited, Travelport, LP, and Orbitz Worldwide, LLC in the United States District Court for the Northern District of Texas. American added Sabre as defendants by amended complaint filed June 9, 2011. American's federal claims included alleged anti-competitive conduct by Sabre and the other defendants and violations of Sections 1 and 2 of the Sherman Act. 15 U.S.C. §§ 1–2.

Meanwhile, in its state court suit, American filed its third amended petition on July 8, 2011, which included a new claim against Sabre for monopolization in violation of Section 15.05(b) of the Texas Free Enterprise and Antitrust Act of 1983 ("TFEAA"). On July 13, 2011, American filed motions for expedited discovery and to compel production of documents in the state court suit and notified Sabre that the motions were to be heard at 2:00 pm on July 18, 2011. On the morning of July 18, 2011, Sabre filed a notice of removal, and the removed case was assigned to United States District Judge McBryde. On July 19, 2011, American filed an emergency motion to remand pursuant to 28 U.S.C. § 1447(c), which the district court granted after holding a telephone conference hearing on the motion.

On July 25, 2011, American filed a motion for an award of fees and costs for Sabre's removal, and Sabre filed a response. On August 4, 2011, the district court issued a 19-page Memorandum Opinion and Order which did not award the full $18,515.00 requested, but instead awarded American $15,955.00 in attorney's fees, finding that Sabre's removal from state court was objectively unreasonable. Sabre appeals the district court's Memorandum Opinion and Order and Final Judgment awarding attorney's fees to American under 28

No. 11-10759

U.S.C. § 1447(c), contending that the district court erred by finding that Sabre's removal was objectively unreasonable.

## DISCUSSION

This court reviews a discretionary award of attorney's fees under 28 U.S.C. § 1447(c) for an abuse of discretion. *Hornbuckle v. State Farm Lloyds*, 385 F.3d 538, 541 (5th Cir. 2004).

28 U.S.C. § 1447(c) provides that, "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." However, "[t]here is no automatic entitlement to an award of attorney's fees." *Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 292 (5th Cir. 2000) (holding that the "mere determination that removal was improper" does not require a district court to award attorney's fees). Rather, a court "may award attorney's fees when the removing party lacks an objectively reasonable basis for removal." *Howard v. St. Germain*, 599 F.3d 455, 457 (5th Cir. 2010) (per curiam) (citing and referring to *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005) (holding that "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal")). The Supreme Court in *Martin* explained, "[t]he appropriate test for awarding fees under § 1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied." 546 U.S. at 140. In that regard, § 1447(c) fee awards are cost recoupments, hence punitive in policy only.

No. 11-10759

Sabre contends that the district court abused its discretion by awarding American attorney's fees despite Sabre's alleged reasonable, good faith[2] interpretation of *Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005), as applied to American's parallel state and federal antitrust lawsuits. In *Grable*, the Court articulated a multi-part test to determine when a state claim is removable: "does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." 545 U.S. at 314.

Addressing the first *Grable* prong, Sabre argues that American's TFEAA claim necessarily raises a stated federal issue because the TFEAA requires the state court to construe the statute "in harmony with federal judicial interpretations of comparable federal antitrust statutes." *See* Tex. Bus. & Com. Code § 15.04. However, nothing in the plain language of the TFEAA or Texas caselaw interpreting the TFEAA requires that federal law control Texas's interpretation of its state antitrust statute.[3] The full text of Tex. Bus. & Com. Code § 15.04 states:

> The purpose of [the TFEAA] is to maintain and promote economic competition in trade and commerce occurring wholly or partly within the State of Texas and to provide the benefits of that competition to consumers in the state. The provisions of [the TFEAA] shall be construed to accomplish this purpose and shall be

---

[2] A defendant's subjective good faith belief that removal was proper is insufficient to establish that the district court abused its discretion in awarding attorney's fees under Section 1447(c). *Valdes*, 199 F.3d at 292 ("To be sure, the district court may award fees even if removal is made in subjective good faith.").

[3] A state legislature cannot by statute confer jurisdiction over a state-law claim to a federal court. *See Burford v. Sun Oil Co.*, 319 U.S. 315, 317 (1943). The district court observed that if it were to accept the argument that the "in harmony" language of the TFEAA presents a "stated federal issue," then "every cause of action brought in state court under the TFEAA would automatically be removable to federal court."

No. 11-10759

construed in harmony with federal judicial interpretations of comparable federal antitrust statutes *to the extent consistent with this purpose.*

Tex. Bus. & Com. Code § 15.04 (emphasis added). As the Texas Supreme Court elaborated in *Caller-Times Publ'g Co., Inc. v. Triad Commc'ns, Inc.*, 826 S.W.2d 576 (Tex. 1992), state courts "look to federal law interpreting . . . the Sherman Act for guidance in interpreting . . . the Texas Antitrust Act." *Id.* at 580.  Claims under the TFEAA are "wholly state-law claims" that do not raise a federal issue. *Waste Control Specialists, LLC v. Envirocare of Texas, Inc.*, 199 F.3d 781, 784 (5th Cir. 2000), *modified in part*, 207 F.3d 225 (5th Cir. 2000).[4]

Notably, this case is distinguishable from *Grable*, where the Supreme Court held that federal question jurisdiction existed because "an essential element" of Grable's state-law claim was whether the plaintiff "was given notice within the meaning of the federal [tax] statute" and that issue "appear[ed] to be the only legal or factual issue contested in the case." *Grable*, 545 U.S. at 315. Plaintiff Grable had asserted a quiet title action in state court claiming that the defendant's title was invalid because the IRS failed to comply with a federal tax

---

[4] Sabre contends that *Waste Control* does not apply here because *Waste Control* was decided before the Supreme Court's decision in *Grable* and concerned the question of whether a Texas antitrust claim is "completely preempted" by federal antitrust law.  Sabre points out that "significant federal issue" jurisdiction is different than jurisdiction based on complete preemption and that it is undisputed that state antitrust claims are not preempted by federal antitrust law. *See Berhhard v. Whitney Nat'l Bank*, 523 F.3d 546, 551 (5th Cir. 2008) (holding that if a petition "alleges only state law claims, the district court [has] federal question jurisdiction over their case only if: (1) the state law claims necessarily raise a federal issue or (2) the state law claims are completely preempted by federal law."); *California v. ARC Am. Corp.*, 490 U.S. 93, 102 (1989) ("Congress has not pre-empted the field of antitrust law . . . . Congress intended the federal antitrust laws to supplement, not displace, state antitrust remedies.").  However, this court's assertion in *Waste Control* that TFEAA claims are "wholly state claims," 199 F.3d at 784, rebuts the argument that a TFEAA claim necessarily "raise[s] a stated federal issue" because the statute "requires" that state courts interpret it "in harmony" with federal antitrust law.  Moreover, it is not determinative that *Grable* was decided after *Waste Control* because *Grable* did not address TFEAA claims and did not create a new basis for federal question jurisdiction. *See Grable*, 545 U.S. at 312–14; *see generally* Fairbairn, Jennifer E., *Keeping Grable Slim: Federal Question Jurisdiction and the Centrality Test*, 58 Emory L.J. 977, 977–89 (2009).

statute in giving notice of the seizure of Grable's property. *Id.* at 311. Here, in contrast, the state court would not be obligated to interpret a federal statute, like the federal notice statute in *Grable*, *id.* at 315 (finding that "[t]he meaning of the federal tax provision is an important issue of federal law that sensibly belongs in a federal court"), because American's claims arise solely under the TFEAA. The district court did not abuse its discretion by concluding that, "[n]o reasonable argument can be made that the mere fact that a federal standard is to be referenced by a state court in determining whether there has been a state-law violation causes a state-law claim to 'necessarily raise a stated federal issue.'" *See Grable*, 545 U.S. at 314.

Sabre's argument, however, extends beyond the text of the TFEAA itself and focuses also on the language of the TFEAA in light of American's parallel state and federal antitrust claims. Sabre contends that, because the TFEAA must be interpreted "in harmony" with federal judicial interpretation of federal antitrust law, "[i]f the federal court were to find American's single-product market definition to be deficient as a matter of law . . . or that Sabre's contractual terms were not exclusionary or anticompetitive as a matter of law . . . then American's parallel state antitrust case would suffer a similar fate." The district court correctly pointed out, however, that, "it's not unusual to have a parallel state court suit and federal court suit that involve the same legal and factual issues, but the difference is that sometimes one of them is brought under federal law and the other one is brought under state law." American did not give up or alter its particular rights to pursue its state-law remedies in state court by simultaneously asserting rights under federal law. *See ARC Am. Corp.*, 490 U.S. at 102 ("Congress intended the federal antitrust laws to supplement, not displace, state antitrust remedies."). Moreover, neither the test set forth in *Grable*, nor caselaw applying the *Grable* test, adjusts the federal question analysis because of the existence of parallel state and federal proceedings;

instead, the *Grable* test asks distinctively whether the state-law claim "necessarily raise[s] a stated federal issue." *Grable*, 545 U.S. at 314. *Grable* directs courts to examine the state-law claim itself, not whether legal or factual determinations included in the state-law claim may also be implicated in a parallel federal proceeding.

Because Sabre failed to satisfy the first prong of the *Grable* test—that is, failed to show that American's state-law claim *necessarily* raises a stated federal issue—we do not address the remaining prongs. Acknowledging the discretion we vest in district courts when assessing attorney's fees, we hold that the district court was within its discretion when it concluded that Sabre did not have objectively reasonable grounds to believe that removal was proper.

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court's award of attorney's fees to Plaintiff-Appellee American.