NALBANDIAN, Circuit Judge, dissenting.
Ordinarily, administrative law does not intend to leave regulated parties caught between a hammer and an anvil. That is why the Supreme Court has recognized a norm in favor of pre-enforcement judicial review of final agency action. See, e.g. , Abbott Laboratories v. Gardner , 387 U.S. 136, 140, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). Judicial review obviates the dilemma of either complying with potentially unlawful (and onerous) regulations or "risk[ing] prosecution." Id. at 152, 87 S.Ct. 1507. But that is the choice CIC Services is left with today. The majority holds that the Anti-Injunction Act bars us from reviewing CIC's pre-enforcement challenge of an Internal Revenue Service reporting requirement.[1] I disagree.
The Anti-Injunction Act bars all "suit[s] for the purpose of restraining the assessment or collection of any tax." 26 U.S.C. § 7421(a). This provision ensures the "prompt collection" of the Government's "lawful revenue." Enochs v. Williams Packing & Nav. Co. , 370 U.S. 1, 7, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962). It allows the Government "to assess and collect taxes alleged to be due without judicial intervention" by requiring taxpayers to seek relief in a refund suit, after the disputed tax is paid. Id. The question here is whether CIC's challenge falls within this statute: Is it a "suit for the purpose of restraining the assessment or collection of any tax?" 26 U.S.C. § 7421(a).
Perhaps at some level of abstraction, it could be. CIC seeks to enjoin an IRS notice that requires it to report certain transactions and to maintain a (reportable) list of clients who engage in those transactions. See Notice 2016-66, 2016-47 I.R.B. 745. CIC contends that the IRS promulgated the notice in violation of the Administrative Procedure Act and the Congressional Review Act.
Of course, the reports themselves are not taxes. Nor do they necessarily contain information showing that CIC or its clients owe taxes. And CIC does not allege tax liability as its injury. Rather, it takes issue with the hundreds of hours of labor and tens of thousands of dollars the requirement will cost to comply with. And all so that, CIC argues, the IRS can unfairly and publicly portray its "industry as one filled with crooked operatives and tax scammers." Put simply, this is not a dispute over taxes.
That said, the IRS promulgated the notice because the agency "lack[s] sufficient information to identify which" transactions have a potential for tax avoidance and which do not. 2016-47 I.R.B. 745. Presumably, once the IRS uses the reported information to identify which ones do, there will be tax consequences for some taxpayers. So it is plausible that CIC's challenge could eventually hinder the assessment and collection of taxes down the road.
But is that enough to trigger the Anti-Injunction Act? According to *260 Direct Marketing Ass'n v. Brohl , --- U.S. ----, 135 S. Ct. 1124, 191 L.Ed.2d 97 (2015), the answer is a resounding "No." What Direct Marketing taught us in interpreting the similarly worded Tax-Injunction Act is that the text of the statute is paramount. And a suit to enjoin the enforcement of a reporting requirement is not a "suit for the purpose of restraining the assessment or collection of any tax." 26 U.S.C. § 7421(a) (emphases added).
As the Supreme Court explained there, "information gathering" (such as the reporting requirement here) is "a phase of tax administration procedure that occurs before assessment ... or collection." Direct Marketing , 135 S. Ct. at 1129 (emphasis added). " 'Assessment' is the next step in the process, and it refers to the official recording of a taxpayer's liability." Id. at 1130. But that does not occur until "after information relevant to the calculation of that liability is reported to the taxing authority." Id. (emphasis added). And "collection" comes even later. See id. It is the "act of obtaining payment of taxes due." Id. To be sure, the Court acknowledged that "assessment" and "collection" could be understood more broadly. See id. at 1130-31. But no matter how broadly those terms might stretch, they refer to phases in the process distinct from "information gathering." See id.
And so, the Court reasoned, the Tax-Injunction Act "is not keyed to all activities that may improve [the Government's] ability to assess and collect taxes." Id. at 1131. "Such a rule would be inconsistent not only with the text of the statute, but also with our rule favoring clear boundaries in the interpretation of jurisdictional statutes." Id. District courts may not "restrain"-i.e., "enjoin," "stop," or "prohibit"[2] -the "assessment" or "collection" of taxes. Id. at 1132. "[A]nd enforcement of ... reporting requirements is none of these." Id. at 1131.
Although Direct Marketing appears to settle the matter, the Government notes a distinction between that case and this one. In Direct Marketing , the penalty that enforced the reporting requirement "was not itself a tax"-or at least no one argued that it was. Florida Bankers Ass'n v. U.S. Dep't of the Treasury , 799 F.3d 1065, 1069 (D.C. Cir. 2015). Here, in contrast, the reporting requirement is enforced by penalties in Chapter 68, Subchapter B of the Tax Code. See 26 U.S.C. §§ 6707, 6707A, 6708. And the Tax Code deems those penalties "taxes." 26 U.S.C. § 6671(a).
*261 So the specific issue here is whether a reporting requirement that is enforced by a "tax" is shielded from pre-enforcement judicial review under the Anti-Injunction Act. The majority adopts the reasoning of Florida Bankers to answer that question affirmatively.
In Florida Bankers , a divided panel of the D.C. Circuit held that the Anti-Injunction Act barred a similar suit challenging the legality of a reporting requirement that the IRS enforced with a tax. See 799 F.3d at 1072. That is because, the court reasoned, the tax is "imposed as a direct consequence of violating the regulation," and so "[i]nvalidating the regulation would directly bar collection of that tax." Id . at 1069. For the D.C. Circuit majority, this distinguished the case from Direct Marketing because "the tax ... is not two or three steps removed from the regulation in question." Id. In other words, there was no attenuation between the assessment and collection of the tax, on the one hand, and invalidating the regulation on the other.
That misses the mark. Enjoining a reporting requirement enforced by a tax does not necessarily bar the assessment or collection of that tax. That is because the tax does not result from the requirement per se. The only way for the IRS to assess and collect the tax is for a party to violate the requirement. So enjoining the requirement only stops the assessment and collection of the tax in the sense that a party cannot first violate the requirement and then become liable for the tax. Surely, this is the kind of attenuated relationship between "restrain," "assessment," and "collection" that Direct Marketing rejected. At best, the difference is one of degree-there may not be three steps of attenuation here or in Florida Bankers , but there certainly is attenuation.[3]
The Florida Bankers court would reject this reasoning as "nifty wordplay." Id. at 1070. To show why it is not, consider this hypothetical: Imagine if the IRS notice here unlawfully discriminated against a group of Americans by subjecting only that group to its reporting requirement. The logic of Florida Bankers would require us to characterize an Equal Protection challenge to the discriminatory notice as a "suit for the purpose of restraining the assessment or collection of [a] tax" simply because it is enforced by a penalty in Chapter 68, Subchapter B of the Tax Code.[4] Intuitively, we know that description cannot stand without warping the meaning of the statute beyond recognition. No one thinks that the plaintiffs in that hypothetical case would care about enjoining the collection of a tax. The purpose of the suit would be to end discriminatory action by the Government. And yet the tax in that hypothetical is no further removed *262 from the notice there than the tax in this case is removed from the notice here.
The Florida Bankers court dismissed an argument based on similar reasoning, stating, "plaintiffs cannot evade the Anti-Injunction Act by purporting to challenge only the regulatory aspect of a regulatory tax." Id . In doing so, the court mainly relied on Bob Jones University v. Simon , 416 U.S. 725, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974) and Alexander v. "Americans United" Inc. , 416 U.S. 752, 94 S.Ct. 2053, 40 L.Ed.2d 518 (1974). Both cases involved non-profit organizations that brought constitutional challenges to IRS letter-rulings revoking their tax-exempt status. See Bob Jones , 416 U.S. at 735-36, 94 S.Ct. 2038 ; Alexander , 416 U.S. at 755-56, 94 S.Ct. 2053. And the plaintiffs in both cases argued that the purpose of their suits was "to ensure that donors seeking tax deductions would continue to contribute to their organizations," not to restrain the assessment or collection of taxes. Seven-Sky v. Holder , 661 F.3d 1, 10 (D.C. Cir. 2011), abrogated on other grounds by Nat'l Fed'n of Indep. Bus. v. Sebelius , 567 U.S. 519, 132 S.Ct. 2566, 183 L.Ed.2d 450 (2012).
But the critical distinction between those cases and this one is that "challenges to IRS letter-rulings revoking tax-exempt status are inextricably linked to the assessment and collection of taxes." Id . The direct consequence of the IRS letter-rulings for both cases was that the organization became liable for federal unemployment taxes. Bob Jones , 416 U.S. at 730, 94 S.Ct. 2038 ; Alexander , 416 U.S. at 755, 94 S.Ct. 2053. In fact, "the only injuries plaintiffs identified involved tax liability." Seven-Sky , 661 F.3d at 10. So the Supreme Court unsurprisingly saw through the plaintiffs' arguments and held that each suit was barred by the Anti-Injunction Act because, if successful, each would "necessarily preclude" the collection of taxes. Bob Jones , 416 U.S. at 732, 94 S.Ct. 2038 ; see also Alexander , 416 U.S. at 761, 94 S.Ct. 2053.
That is not the case here. The regulation that CIC seeks to enjoin does not directly result in any tax liability. Indeed, the IRS cannot even assess the tax unless Plaintiff first violates the regulation. This attenuation means that, unlike in Bob Jones or Alexander , an injunction does not "necessarily preclude" an assessment or collection of taxes. This also alleviates any worry that plaintiffs could avoid the Anti-Injunction Act by always recharacterizing their suits as challenges to a regulation instead of a tax. Plaintiffs may make those arguments, but as in Bob Jones and Alexander , they will often fail.
The other case that the Florida Bankers court substantially relied on, NFIB v. Sebelius , is not to the contrary. There, the plaintiffs argued that the Anti-Injunction Act should not apply since they were challenging a regulatory mandate to purchase health insurance, not the penalty for failing to purchase the insurance. Florida Bankers , 799 F.3d at 1071. Though the Supreme Court agreed that the Anti-Injunction Act did not apply, it did so because it held that the penalty at issue was not a tax under the statute. Id. The Florida Bankers court read the decision to mean that "the Anti-Injunction Act would have applied if the penalty were a tax under the Act." Id. It gave two reasons for reaching that conclusion. First, it relied on the Supreme Court's statement that because the penalty was not a tax under the Anti-Injunction Act, the statute did not apply, and so the Court could go on to reach the merits. Id. Second, the court noted that the Supreme Court failed to expressly address plaintiffs' argument despite "the extensive briefing and [oral] argument focused on [it]." Id.
*263 But as Judge Henderson explained in her dissent, the first reason falls victim to the fallacy of "denying the antecedent." Id. at 1080 (Henderson, J., dissenting). Stated abstractly, it means one is wrong to assume that because a conditional premise is true, so is its inverse. See id. (citing New England Power Generators Ass'n, Inc. v. FERC , 707 F.3d 364, 370 & n.3 (D.C. Cir. 2013) ). Stated in terms of this case, it means one is wrong to assume that a suit implicating a tax triggers the Anti-Injunction Act simply because a suit not implicating a tax does not trigger the Anti-Injunction Act.
On top of that, and again as Judge Henderson noted, the first reason is not textually sound. Id. Even if a suit implicates a tax, that does not mean it is necessarily barred by the Anti-Injunction Act: "the suit may nonetheless not seek to 'restrain[ ] the assessment or collection' of said tax." Id. (alteration in original) (quoting 26 U.S.C. § 7421(a) ).
The second reason is inherently speculative and, regardless, cuts in both directions. For it is just as likely that the Supreme Court intentionally avoided the issue since it was unnecessary to reach in that case. At bottom, the NFIB Court never said that pre-enforcement review of a regulatory mandate is barred under the Anti-Injunction Act simply because it is enforced by a tax. A search for that proposition in the opinion leaves one emptyhanded.
More importantly, the NFIB Court did not have the benefit of its later decision in Direct Marketing . We do. And there the Court did not mince its words: "[E]nforcement of ... reporting requirements is" neither "assessment" nor "collection." 135 S. Ct. at 1131. Nothing in the Court's decision causes me to think it would have held differently if someone had argued that the $ 5 or $ 10 penalties in that case were taxes.
Under the majority's decision, CIC now only has two options: (1) acquiesce to a potentially unlawful reporting requirement that will cost it significant money and reputational harm or (2) flout the requirement, i.e., "break the law," to the tune of $ 50,000 in penalties for each transaction it fails to report. See 26. U.S.C. § 6707(a)-(b). Only if it (or someone else) follows the latter path-and only when (or if) the Government comes to collect the penalty-will any court be able to pass judgment on the legality of the regulatory action.
Moreover, plaintiffs who do follow that path are not only subject to financial penalties but also criminal penalties.[5] The Tax Code makes it a misdemeanor for any person who "willfully fails" to "make any return, keep any records, or supply any information" required under its title and its regulations. 26 U.S.C. § 7203. And it fines that person $ 25,000 ($ 100,000 if it's a corporation). See id.
In other words, the only lawful means a person has of challenging the reporting requirement here is to violate the law and risk financial ruin and criminal prosecution. That is probably enough to test the intestinal fortitude of anyone. And it leaves CIC in precisely the bind that pre-enforcement judicial review was meant to avoid. See, e.g. , Free Enter. Fund v. Pub. Co. Accounting Oversight Bd. , 561 U.S. 477, 490, 130 S.Ct. 3138, 177 L.Ed.2d 706 (2010) ("We normally do not require plaintiffs to 'bet the farm ... by taking the violative action' before 'testing the validity of the law.' ") (quoting *264 MedImmune, Inc. v. Genentech, Inc. , 549 U.S. 118, 129, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007) ); MedImmune, Inc. , 549 U.S. at 128-29, 127 S.Ct. 764 ("[W]here threatened action by government is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat."); Gardner v. Toilet Good Ass'n , 387 U.S. 167, 172, 87 S.Ct. 1526, 18 L.Ed.2d 704 (1967) (concluding that a "proposed avenue of review [ ] beset with penalties and other impediments [is] inadequate as a satisfactory alternative to [pre-enforcement review]").
That might not be so alarming if this predicament was confined to this notice. But at least two commentators predict that the reasoning of Florida Bankers would apply to "most if not all Treasury regulations and IRS guidance documents." Kristin E. Hickman & Gerald Kersa, Restoring the Lost Anti-Injunction Act , 103 Va. L. Rev. 1683, 1685 (2017). The inevitable consequence of our decision today is that "many" of those regulations and guidance documents will be rendered "effectively unreviewable." Id. at 1686. In the process, something more may be lost than the private stakes in each meritorious case that would have otherwise been brought. And that is, "public confidence in the quality and legitimacy of agency action" for which judicial review was meant to serve as a protective bulwark. Id.
And to what end? The chief "evil[ ]" the Anti-Injunction Act sought to ward off was undue judicial "interfere[nce] with the process of collecting the taxes on which the government depends for its continued existence." Taylor v. Secor , 92 U.S. 575, 613, 23 L.Ed. 663 (1875). But the reporting requirement here generates no revenue for the Government. And the point of the penalty is to incentivize compliance with the requirement-not to incentivize its own assessment and collection. So it is not at all clear to me that barring CIC's suit serves the purpose of the Anti-Injunction Act. Indeed, the opposite appears true.
If all this seems rather anomalous, that is because it is. In the typical Anti-Injunction Act case, a plaintiff seeks to prevent some imminent process of assessment or collection relating to the taxes that he owes for a given year. See, e.g. , Tatar v. United States , No. 17-2088, 2018 WL 2247497 at *1 (6th Cir. Apr. 24, 2018) (unpublished); Dunlap v. Lew , No. 16-3658, 2017 WL 9496075 at *1 (6th Cir. June 2, 2017) (unpublished). To seek judicial review, all the plaintiff must do is (leaving aside some procedural hoops) pay the tax and sue for a refund. See Dunlap , 2017 WL 9496075 at *2. In that way, the Anti-Injunction Act's goal of ensuring the Nation's efficient collection of tax revenues is fulfilled, and the plaintiff has every incentive to seek judicial review if he has a meritorious claim.
Contrast that with the situation here: the path to judicial review is fraught with threats of penalties, fines, and prosecution-all intended to encourage compliance with a reporting requirement that collects not a penny for the Government. The anomalous implications of today's decision should convince us that we have given an anomalous reading to the Anti-Injunction Act.
For these reasons, I would hold that the Anti-Injunction Act does not bar CIC's suit.

Here, references to the Anti-Injunction Act also refer to the tax exception to the Declaratory Judgment Act, both of which are "to be interpreted coterminously." Ecclesiastical Order of the ISM of AM, Inc. v. Internal Revenue Serv. , 725 F.2d 398, 404-05 (6th Cir. 1984).

In Direct Marketing , the Court opted to give "restrain" this narrower meaning as opposed to its broader meaning, which would apply to suits that "merely inhibit " assessment or collection. 135 S. Ct. at 1132. The majority nevertheless cautions that it is "unclear" that "restrain" carries the same meaning in the Anti-Injunction Act that it does in the Tax-Injunction Act. But the Court explained that the words used in both statutes "are generally used in the same way." Id. at 1129. It also justified giving "restrain" its narrower meaning, in part, on the fact that, in the Tax-Injunction Act, "restrain" operates "on a carefully selected list of technical terms-'assessment, levy, collection'-not on an all-encompassing term, like 'taxation.' " Id. at 1132. To give restrain its broader meaning, the Court reasoned, "would be to defeat the precision of that list, as virtually any court action related to any phase of taxation might be said to 'hold back' 'collection.' " Id. The only difference between the Anti-Injunction Act and the Tax-Injunction Act in that respect is that the former omits the word "levy" from its text. Finally, the Court explained that the "narrower definition is consistent with the rule that '[j]urisidictional rules should be clear.' " Id. at 1133 (quoting Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg. , 545 U.S. 308, 321, 125 S.Ct. 2363, 162 L.Ed.2d 257 (2005) (Thomas, J., concurring) (alteration in original)). These reasons militate in favor of giving "restrain" its narrower meaning in the Anti-Injunction Act, too.

And, unsurprisingly, commentators have recognized the tension between Florida Bankers and Direct Marketing . See, e.g. , Kristin E. Hickman & Gerald Kerska, Restoring the Lost Anti-Injunction Act , 103 Va. L. Rev. 1683, 1685 (2017) ("Florida Bankers also arguably contradicts the Supreme Court's reading in Direct Marketing Ass'n v. Brohl of the similarly worded Tax Injunction Act ...."); Stephanie Hunter McMahon, Pre-Enforcement Litigation Needed for Taxing Procedures , 92 Wash. L. Rev. 1317, 1368 (2017) ("Direct Marketing is seemingly at odds with another case, discussed in the prior Part, Florida Bankers Ass'n v. Department of Treasury ."); Patrick J. Smith, D.C. Circuit in Florida Bankers Misapplies Anti-Injunction Act , 149 Tax Notes 1493, 1493 (Dec. 21, 2015) ("This report explains how the majority opinion in Florida Bankers is inconsistent with Direct Marketing , as well as D.C. Circuit precedent on the AIA.").

To be sure, the court in Florida Bankers suggested that the regulation would have to be "tax-related." 799 F.3d at 1067. But, as the hypothetical demonstrates, one can imagine any number of pernicious regulations that could be made to fit that description.

If that seems like it must be wrong, think again. The Government's only response to whether it could criminally prosecute a person seeking judicial review for failing to supply the required information was that it was "not clear." [Government's Br. at 58.]