08-1194-cv(L)
State of New York v. Shinnecock Indian Nation

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in th City of New York, on the 28th day of November, two thousand twelve.

- - - - - - - - - - - - - - - - - - - - - - - -x

STATE OF NEW YORK, NEW YORK STATE RACING AND WAGERING BOARD, and NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION,

Plaintiffs-Appellees,

TOWN OF SOUTHAMPTON,

Consolidated-Plaintiff-Appellee,

- v.-                                    08-1194-cv

SHINNECOCK INDIAN NATION, LANCE A. GUMBS, RANDALL KING, KAREN HUNTER, and FREDERICK C. BESS,

Defendants-Appellants.

- - - - - - - - - - - - - - - - - - - - - - - -x

FOR PLAINTIFFS-APPELLEES:     DENISE A. HARTMAN, Assistant Solicitor General (Eric T. Schneiderman, Attorney General of the State of New York, Barbara D. Underwood, Solicitor General, Andrew D. Bing, Deputy Solicitor General, on the brief), Albany, New York.

**FOR CONSOLIDATED**
**PLAINTIFF-APPELLEE:**          MICHAEL S. COHEN (David M. Schraver, David H. Tennant, <u>on the brief</u>), Nixon Peabody LLP, Jericho, New York.

**FOR DEFENDANTS-APPELLANTS:**   CHRISTOPHER H. LUNDING (Evan A. Davis, Ashika Singh, <u>on the brief</u>), Cleary Gottlieb Steen & Hamilton LLP, New York, New York.

## ORDER

Following disposition of this appeal on June 25, 2012, an active judge of the Court requested a poll on whether to rehear the case <u>in banc</u>. A poll having been conducted and there being no majority favoring <u>in banc</u> review, rehearing <u>in banc</u> is hereby **DENIED**.

Peter W. Hall, <u>Circuit Judge</u>, joined by José A. Cabranes and Rosemary S. Pooler, <u>Circuit Judges</u>, dissents by opinion from the denial of rehearing <u>in banc</u>.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK

Hall, Circuit Judge, with whom Judge Cabranes and Judge Pooler join, dissenting from the denial of rehearing *en banc*:

I respectfully dissent from the majority's vote to deny *en banc* review. This appeal has raised a question of exceptional importance in our Circuit—and indeed, in the nation—regarding Indian property rights and tribal access to federal courts when tribes are facing state or local regulatory enforcement actions that, of necessity, involve the status of aboriginal title to Indian-held lands. The question presented is this: Can an Indian tribe remove to federal court a State-initiated regulatory suit affecting Indian property when the very essence of the controversy is whether federal law deprives the State of any authority over that property? The district court answered this question in the affirmative, deciding the case on the merits. A split panel of this Court answered in the negative, vacated the decision of the district court, and instructed that the case be remanded to state court. In so doing we have decreed that in a class of cases involving state and local enforcement of land use laws against Indian tribes, the status of a tribe's title to the affected real property will henceforth be decided by state courts, not federal courts. Such decisions regarding title will be made in the context of cases in which the states will understandably be at their most aggressive, seeking to exercise control over how real property within the boundaries of state borders may be used.

As our precedent now stands, should a question arise in the context of a state or local regulatory enforcement action concerning aboriginal title to Indian-held lands, Indian tribes in Connecticut, New York, and Vermont no longer have access to a federal forum under 28 U.S.C. § 1331 to resolve questions of title. In fact, the majority's decision ensures that every state or local regulatory enforcement action brought against an Indian tribe occupying tribe-owned land

1

but alleged to be occupying non-"Indian land,"[1] whether commenced initially in federal court or commenced in state court and removed to federal court, will be dismissed for want of federal subject-matter jurisdiction.  The net effect is that questions regarding Indian-land status will necessarily be resolved by a state court—a result clearly at odds with over two-hundred years of federal Indian law jurisprudence, which has evolved in large part to address and accommodate the historically thorny nature of tribal-state relations and a fear of "home-cooking" in state courts, particularly as to issues involving the assertion of state jurisdiction over Indian tribes and tribal land.  *See Organized Village of Kake v. Egan*, 369 U.S. 60, 71–75 (1962) (surveying the evolution of "[t]he relation between the Indians and the States" over the course of United States history and the attendant metamorphosis of state jurisdiction over tribes); *cf. Arizona v. San Carlos Apache Tribe of Ariz.*, 463 U.S. 545, 559 n.10 (1983) (describing legislative intent behind 28 U.S.C. § 1362, which provides original federal court jurisdiction over civil actions brought by Indian tribes, as "reflect[ing] a congressional policy *against* relegating Indians to state court when an identical suit brought on their behalf by the United States could have been heard in federal court" (emphasis added)).  These concerns should inform our interpretation of § 1331, which Congress passed at a time when states were often (quite literally) the "deadliest enemies" of Indian tribes.  *United States v. Kagama*, 118 U.S. 375, 384 (1886); *see* Act of Mar. 3, 1875, § 1, 18 Stat. 470.

---

[1] Federal law defines "Indian lands" as "(A) all lands within the limits of any Indian reservation; and (B) any lands title to which is either held in trust by the United States for the benefit of any Indian tribe or individual or held by any Indian tribe or individual subject to restriction by the United States government against alienation and over which an Indian tribe exercises governmental power."  25 U.S.C. § 2703(4); *see also* 18 U.S.C. § 1151 (defining "Indian country" as "(a) all land within the limits of any Indian reservation under the jurisdiction of the United States, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation, (b) all dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state, and (c) all Indian allotments, the Indian titles to which have not been extinguished, including rights-of-way running through the same"); *Okla. Tax Comm'n v. Chickasaw Nation*, 515 U.S. 450, 453 n.2 (1995) (applying the definition of "Indian country" in the federal criminal code to a dispute regarding state regulatory authority).

Because this case involves a question of exceptional importance—i.e., whether, in the context of a regulatory enforcement action brought by state and local authorities, a challenge to a tribe's claim of aboriginal title to tribe-held land raises a federal question—we should have revisited the issue *en banc*.[2] We should also have answered the question in the affirmative.

As precedent, the result in this case has a significant impact on the rights of other tribes in our Circuit to access a federal forum to resolve questions of title when the core issue in play is whether under federal law that property is Indian land. Even worse, this precedent now puts into question whether tribes may bring anticipatory suits seeking declaratory judgments concerning their land rights. By refusing to proceed *en banc* and rectify this result, we now risk that lower courts will read the majority opinion as requiring dismissal for lack of jurisdiction under § 1331 in any such declaratory action arising either in response to or in anticipation of a state enforcement action affecting tribal land. *See Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 16 (1983) (noting that "*Skelly Oil* has come to stand for the proposition that 'if, but for the availability of the declaratory judgment procedure, the federal claim would arise only as a defense to a state created action, jurisdiction is lacking'" (citation omitted)).

Neither party having incentive to pursue this issue further,[3] I am troubled that this Court has chosen not to preserve the federal forum to which Indian tribes are entitled when they face state enforcement actions affecting tribe-owned property. Federal policy has consistently

---

[2] I also note that *en banc* review would have provided us the opportunity to seek an amicus brief from the Bureau of Indian Affairs and the Department of Justice whose Office of Tribal Justice is responsible for the federal government's policies and litigation positions concerning the status of Indian-held lands.

[3] Despite the possible long term damage to Indian law jurisprudence, there is no real impetus for the parties to pursue Supreme Court review in this case. The Shinnecock have little or no incentive to seek certiorari given the unfavorable merits determination at trial. Because the appellate majority dismissed for want of jurisdiction and vacated the district court's decision, the Tribe now gets another bite at the apple, albeit in state court. The State, too, has little incentive to seek certiorari since it merely will continue its action in the state court where it commenced the action in the first instance. This is yet one more reason that the Court should have engaged in *en banc* review.

3

recognized the importance "of Indian sovereignty and the congressional goal of Indian self-government, including its 'overriding goal' of encouraging tribal self-sufficient and economic development." *California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 216 (1987) (quoting *New Mexico v. Mescalera Apache Tribe*, 462 U.S. 324, 334–35 (1983)); *see also* 25 U.S.C. § 450; 25 U.S.C. § 1451. Our reluctance to assess "arising under" federal-question jurisdiction under *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005), on *en banc* review should not insulate from review the majority's abandonment of our longstanding recognition that "'[u]nquestionably it has been the policy of the federal government from the beginning to respect the Indian right of occupancy, which could only be interfered with or determined by the United States.'" *See Oneida Indian Nation of N.Y. State v. County of Oneida*, 414 U.S. 661, 668–69 (1974) (quoting *Cramer v. United States*, 261 U.S. 219, 227 (1923)). Worse, I believe that we have now potentially disturbed *Oneida* in a way the Supreme Court did not in *Oklahoma Tax Commission v. Graham*, 489 U.S. 838 (1989) (per curiam). Questions involving the possessory rights of tribes with respect to lands held by aboriginal title are not the equivalent of wielding tribal immunity as an affirmative defense. *See Oneida*, 414 U.S. at 667–70 (holding that questions concerning the "possessory rights of Indian tribes to their aboriginal lands" arise under federal law within the meaning of 28 U.S.C. § 1331).

The jurisdictional question presented in this case takes on special importance given the significant and dispositive federal issues appearing on the face of the State of New York's and Town of Southampton's complaints. When, as here, there is a complaint that "assert[s] a current right to possession conferred by federal law, wholly independent of state law," *see id.* at 666, *Oneida* instructs that such claims "[do] not arise solely in anticipation of a defense," especially "[g]iven the nature and source of the possessory rights of Indian tribes to their aboriginal lands . .

4

. ." *Id.* at 666–67; *see also* J.A. 60, ¶¶ 45, 47 (State's complaint); *id.* at 3993, ¶ 7 (Town's complaint). For *Oneida* to retain its meaning, such questions of possessory rights must be understood to trigger federal-question jurisdiction in property actions regardless of a tribe's status as plaintiff or defendant. The majority holds otherwise, citing *Graham*, 489 U.S. at 841, in which the Supreme Court, too, did not disturb *Oneida*. Unlike in *Graham*, however, we are not considering here what a state can or cannot do with respect to moneys held by a tribe or whether it can regulate or tax tribal enterprises. I concede that if the Shinnecock had already built their casino on Westwoods, their pleading immunity from a state tax on the proceeds would be an insufficient basis for federal subject-matter jurisdiction. The issue key to this case, however, is not tribal immunity pleaded in defense to a state tax or commercial regulatory action. Rather, it is squarely the resolution of a substantial question of federal law—namely, whether Westwoods is "Indian land" within the meaning of 25 U.S.C. § 2703(4) and 18 U.S.C. § 1151, such that it lies beyond the State's regulatory authority. Thus, to extend *Graham* to property actions involving the delicate issues of Indian possessory rights ignores the nature of the "Indian land" inquiry and conflates it with tribal immunity in a way never before done by this Court or the Supreme Court, especially in actions involving a state's efforts to frustrate those rights. For these reasons, and the reasons that follow, I respectfully dissent from the Court's decision not to examine these issues *en banc*.

**Background**

The following facts are drawn largely from the majority's opinion and are not disputed. In 2003, the Shinnecock undertook the construction of a 61,000-square-foot casino on 80 acres of land it owned in the town of Southampton, New York. The land is known as Westwoods. The Tribe did not obtain any permits from the State of New York or the Town of Southampton.

On or about June 29, 2003, the State of New York, the New York State Racing and Wagering Board, and the New York State Department of Environmental Conservation (collectively, "the State") brought suit against the Tribe in New York State Supreme Court. The State sought to prevent the Tribe from going forward with the casino in light of the Tribe's alleged failure to comply with certain state laws. The State asserted five claims, the most significant of which alleges that the planned casino violates state law and is outside the scope of the Indian Gaming Regulation Act ("IGRA")—a federal act, codified at 25 U.S.C. § 2701 *et seq.*, that authorizes tribal gaming under certain conditions—because, at that time, the Tribe was not federally recognized and Westwoods was not, according to the State, "Indian lands." The State sought (1) to enjoin the Tribe from constructing and operating a casino at Westwoods and (2) a declaration that, among other things, the Tribe may not pursue gambling activities at the site until it complies with state law or the IGRA.

The Tribe removed the case to federal court on the basis that the State's complaint pleaded issues of federal law. In the Tribe's answer to the complaint, it asserted that neither the State nor the Town has the power to regulate activities at Westwoods because the Tribe has aboriginal title to the land. Initially, the State moved to remand the action to state court. Disputing that it had articulated a federal question on the face of its complaint, the State argued that its complaint is based entirely on violations of New York state law, and that the Tribe's removal of the case to federal court was based on the complaint's anticipation of certain defenses. The district court rejected the State's argument and held that the State's complaint asserts a violation of the IGRA and raises federal questions about the possessory rights of the tribe with respect to Westwoods. *New York v. Shinnecock Indian Nation*, 274 F. Supp. 2d 268 (E.D.N.Y. 2003). The Town's enforcement action, which was filed before the remand ruling

6

issued, was ultimately consolidated with the State's action.  After a bench trial, which focused on the history of the Shinnecock and their aboriginal title to the land at Westwoods and on the casino's potential impact on neighboring landowners and the Town of Southampton, the district court found that the Shinnecock tribe did not hold aboriginal title to the land in question.  It granted the State's and Town's requests to enjoin the construction of the casino.

On appeal, having lost at trial in federal court, the Shinnecock reversed course and asked us to revisit the district court's conclusion that the underlying complaints raised questions of federal law.  The panel majority then held that the complaints plead nothing more than state law claims and that the dispositive federal question in this case, whether the Tribe holds aboriginal title to Westwoods, arises *only* in the context of the Tribe's defenses such that it is an insufficient basis for federal-question jurisdiction.

**Discussion**

It is well-settled that federal-question jurisdiction exists where, *inter alia*, it is clear from the face of the complaint that "the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd.*, 463 U.S. at 28.  To be clear, from the record and on the face of pleadings, the Tribe is fee simple owner of Westwoods and occupies that tract of land outright, invoking at the outset of the case a presumption that Westwoods is Indian land and is thus beyond the regulatory purview of the State.  Only by demonstrating (1) that the Tribe does not hold aboriginal title to the land and (2) that Westwoods in fact is *not* Indian land within the meaning of 25 U.S.C. § 2703(4) and 18 U.S.C. § 1151—two issues that are irrefutably questions of federal law and ones reflecting an important national interest—can the State and Town assert the right to regulate the tribe's construction project in the first instance.  *See Oneida*, 414 U.S. at 667–70 (holding that questions concerning the "possessory

7

rights of Indian tribes to their aboriginal lands" arise under the Constitution, laws, or treaties of the United States within the meaning of 28 U.S.C. § 1331).

The majority has focused its attention on the Tribe's defenses to regulation and the Plaintiffs' anticipation of those defenses. As acknowledged in the dissent, resolving whether Westwoods is Indian land or is held by aboriginal title is necessary *also* to adjudicating the Tribe's defenses or anticipated defenses, but federal-question jurisdiction exists in this case not because of these anticipated defenses but because the Plaintiffs, in order to establish that they have any authority over the Tribe's activities at issue, must prove in their case-in-chief that Westwoods is *not Indian land*. The majority ignores the antecedent nature of this inquiry and overlooks the fact that the Plaintiffs' authority to regulate the Tribe's activities on the Westwoods parcel necessarily turns on whether the Tribe holds aboriginal title to the land in question and ultimately whether Westwoods is Indian land—issues plainly arising under the laws of the United States.

In its complaint, the State affirmatively pleads that the Tribe occupies and holds fee simple title to the land at issue. The State, however, also avers that the Tribe's property is "subject to the jurisdiction of New York State" and declares that the State will prove, in order to prevail on its claims, that Westwoods is not "Indian Country." J.A. 60, ¶ 47; *see also id.*, ¶ 45. The State also pleads that "the site of the planned casino is not 'Indian Country' as defined in federal law and in [the Indian Gaming Regulatory Act]," *id.* at 63 ¶ 76; and that "the defendant's property which is the subject of this action, the gaming site, does not constitute 'Indian lands,'" *id.* at 66 ¶ j. The Town, in its complaint, pleads that the Tribe is the fee simple owner of the land at issue. *Id.* at 3993, ¶7. Because the Tribe owns and occupies Westwoods, and that parcel is prima facie Indian land, the Town's and State's right to relief—*i.e.*, regulation of

8

Westwoods—necessarily depends on the resolution of a substantial question of federal law— namely, whether Westwoods is "Indian land" within the meaning of 25 U.S.C. § 2703(4) and 18 U.S.C. § 1151. *See Franchise Tax Bd.*, 463 U.S. at 27–28. Indeed, unless the Plaintiffs can demonstrate that Westwoods is not Indian land, the State's and the Town's authority to regulate the Tribe's activities in this case is a dead letter. *See Cohen's Handbook of Federal Indian Law* § 6.03[1][a] (Nell Jessup Newton et al. eds., 2005) ("A state ordinarily may not regulate the property or conduct of tribes or tribal-member Indians in Indian country." (citing *The Kansas Indians*, 72 U.S. 737 (1867); *Worcester v. Georgia*, 31 U.S. 515 (1832); *Okla. Tax Comm'n v. Sac & Fox Nation*, 508 U.S. 114, 125 (1993))).

Furthermore, the Plaintiffs' challenge to the Tribe's right to possession and use of the land in the manner the Tribe is proposing is premised on the State's allegation that aboriginal title has been extinguished. It is a well-settled principle that the Tribe's right of occupancy is "entitled to the protection of federal law and with respect to Indian title based on aboriginal possession, 'the power of Congress . . . is supreme.'" *Oneida*, 414 U.S. at 669 (quoting *United States v. Santa Fe Pac. R.R. Co.*, 314 U.S. 339, 347 (1941)). That being the case, a challenge to that right to occupancy is also governed by federal law and "'could only be . . . determined by the United States.'" *Id.* at 668 (quoting *Cramer v. United States*, 261 U.S. 219, 227 (1923)). Accordingly, before reaching the merits of the Plaintiffs' underlying state law claims, the court deciding this matter must first determine whether Westwoods is Indian land, *i.e.*, whether the Tribe holds aboriginal title to the land—a substantial federal issue present on the face of the complaint. *Id.* at 670.[4]

---

[4] The majority's attempt to distinguish the finding of jurisdiction in *Oneida* from the instant case fails. The majority overlooks that the *Oneida* court found multiple bases for federal subject-matter jurisdiction, including the existence of a possessory land claim by a tribe in the complaint. The Court in *Oneida* also observed "that federal law now protects, and has continuously protected from the time of the formation of the United States, possessory rights to

The Supreme Court has also determined that jurisdiction pursuant to § 1331 will be satisfied in actions arising under state law, such as the state regulatory enforcement action here, where "a state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods.*, 545 U.S. at 314. Under the Supreme Court's test in *Grable*, federal-question jurisdiction is satisfied here because the determination of whether the Tribe holds aboriginal title to Westwoods is an essential element of the State's claims and an implicit component of the Town's right to regulation. If Westwoods is "Indian land," then the Plaintiffs' enforcement authority will not extend to the land in question. In other words, the State can plead facially viable claims in the present case only by pleading that the Tribe does not hold aboriginal title to Westwoods—an issue of federal law that is actually in dispute by virtue of the Tribe's pre-suit ownership and occupation of Westwoods as if the Tribe does hold Indian title.

In *Grable,* the plaintiff sued to quiet title to real property that had been seized and sold by the IRS to satisfy the plaintiff's federal tax delinquency. 545 U.S. at 310. The plaintiff argued that the tax sale to the defendant was invalid because the IRS had not given him (the plaintiff) valid notice as required by the federal statute governing IRS tax sales. *Id.* The defendant removed the case to federal court arguing that the plaintiff's state law quiet title action presented a federal question because the plaintiff's claim of title depended on an interpretation of federal law. *Id.* at 311. The Supreme Court held that the plaintiff's state law claim arose under federal law for purposes of federal question subject-matter jurisdiction because "[w]hether [the plaintiff]

tribal lands . . . ." 414 U.S. at 677. Finally, the Supreme Court noted that 25 U.S.C. § 233, which enumerates a number of grounds for state court jurisdiction over certain civil actions and proceedings involving Indians, left intact the availability of a federal forum for resolving disputes concerning Indian land. *Id.* at 680–81; *see* 25 U.S.C. § 233 ("[N]othing herein contained shall be construed as conferring jurisdiction on the courts of the State of New York or making applicable the laws of the State of New York in civil actions involving Indian lands . . . .").

was given notice within the meaning of the federal statute is . . . an essential element of its quiet title claim, and the meaning of the federal statute is actually in dispute." *Id.* at 315.

Here, as in *Grable*, federal law is not "precluding" or "providing" the State's causes of action, but rather dictates whether the Plaintiffs may assert regulatory authority over Westwoods. Pursuant to the analysis set out in *Grable*, therefore, federal subject-matter jurisdiction because, at the very least, the Plaintiffs must demonstrate, as part of their case-in-chief, that Westwoods is not Indian land in order to assert any regulatory authority over the Tribe's activities at that site. *See also Oneida*, 414 U.S. at 677 ("[T]he assertion of a federal controversy does not rest solely on the claim of a right to possession derived from a federal grant of title whose scope will be governed by state law. Rather, it rests on the not-insubstantial claim that federal law now protects, and has continuously protected from the time of the formation of the United States, possessory rights to tribal lands, wholly apart from the application of state law principles which normally and separately protect a valid right of possession."). Moreover, in *Grable*, the Supreme Court identified a number of considerations warranting federal jurisdiction: (1) the federal issue is one that "sensibly belongs in federal court;" (2) the issue "appears to be the only legal or factual issue contested in the case;" (3) there exists an important national interest in providing a federal forum for adjudicating the dispute; and (4) recognizing federal jurisdiction under the circumstances would not disrupt federal-state comity. 545 U.S. at 315. Each of the *Grable* considerations is present in this case and informs the view that (1) the district court properly held that it had federal subject-matter jurisdiction over the instant matter and that (2) the majority's conclusion is in error.

As stated in the dissent:

> The issue of aboriginal title and therefore the propriety of state and local
> regulation over that land "appears to be the only legal or factual issue

11

contested in the case." *Id.* There is also an important and historic interest in providing Indian tribes with a federal forum for adjudicating their land disputes with states, and the risk that recognizing federal jurisdiction over this case will open the floodgates for cases involving state casino permitting disputes is minimal at best. *See id.* In sum, whether Westwoods is Indian land is an important national issue that has historically and routinely been resolved by federal courts and is a question that must be resolved before reaching all other aspects of the state's case. *See generally McClanahan v. State Tax Comm'n of Ariz.*, 411 U.S. 164, 168-69 (1973) ("'The policy of leaving Indians free from state jurisdiction and control is deeply rooted in the Nation's history.'" *Rice v. Olson*, 324 U.S. 786, 789 (1945)). "This policy was first articulated by this Court 141 years ago when Mr. Chief Justice Marshall held that Indian nations were 'distinct political communities, having territorial boundaries, within which their authority is exclusive, and having a right to all the lands within those boundaries, which is not only acknowledged, but guarantied [sic] by the United States.'" *McClanahan*, 411 U.S. at 168 (citing *Worcester v. Georgia*, 6 Pet. 515, 557 (1832)).

*New York v. Shinnecock Indian Nation*, 686 F.3d 133, 146–47 (2d Cir. 2012) (Hall, J., dissenting).

"[T]here is no good reason to shirk from federal jurisdiction over the dispositive and contested federal issue at the heart" of this case, *Grable*, 545 U.S. at 319–20, and whether the Tribe holds aboriginal title to Westwoods is "an important issue of federal law that sensibly belongs in a federal court," *id.* at 315. In my view, the majority's decision will wreak great havoc on tribal possessory claims, especially those arising in the context of state and local regulatory actions. The matter is one, therefore, of exceptional importance that should have been revisited by the Court as a whole. *See* Fed. R. App. P. 35(a)(2). I respectfully dissent.