# United States Court of Appeals
## For the First Circuit

No. 17-1951

NARRAGANSETT INDIAN TRIBE, acting by and through the
Narragansett Indian Tribal Historic Preservation Office,

Plaintiff, Appellant,

v.

RHODE ISLAND DEPARTMENT OF TRANSPORTATION; FEDERAL HIGHWAY
ADMINISTRATION; ADVISORY COUNCIL ON HISTORIC PRESERVATION; RHODE
ISLAND HISTORICAL PRESERVATION AND HERITAGE COMMISSION,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. William E. Smith, Chief U.S. District Judge]

Before

Torruella, Kayatta, and Barron,
Circuit Judges.

William P. Devereaux, with whom Pannone Lopes Devereaux &
O'Gara LLC was on brief, for appellant.
Mariana E. Ormonde, Special Assistant Attorney General, with
whom Peter F. Kilmartin, Attorney General, and Neil F.X. Kelly,
Assistant Attorney General, were on brief, for Rhode Island
appellees.
Michael T. Gray, Attorney, Appellate Section, Environment and
Natural Resources Division, United States Department of Justice,
with whom Jeffrey H. Wood, Acting Assistant Attorney General, and
Eric Grant, Deputy Assistant Attorney General, were on brief, for
federal appellees.

August 30, 2018

**KAYATTA**, **Circuit Judge**.  The Narragansett Indian Tribe (the "Tribe") appeals the district court's dismissal of its complaint against a handful of federal and Rhode Island agencies concerning a highway bridge reconstruction over historic tribal land.  At base, the Tribe contends that the state of Rhode Island broke a promise made to the Tribe.  Because this is not the type of claim federal courts may adjudicate, we affirm the district court's dismissal of the complaint.

**I.**

We take the facts as described by the Tribe in its complaint.  See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 5 (1st Cir. 2011).  The Tribe's grievance stems from an agreement reached between the Tribe and state and federal agencies under the auspices of the National Historic Preservation Act, 54 U.S.C. § 300101 et seq. (the "NHPA" or the "Act").  The NHPA requires federal agencies overseeing major projects that involve the expenditure of federal funds to "take into account the effect of" that project on historic properties, including some tribal lands. 54 U.S.C. § 306108; see also Narragansett Indian Tribe v. Warwick Sewer Auth., 334 F.3d 161, 166 (1st Cir. 2003).  One way a federal agency can meet its NHPA obligations is by following the so-called "section 106" process, which requires federal agencies to consult with key stakeholders in what we have described as a "stop, look, and listen" process.  Warwick Sewer Auth., 334 F.3d at 166; see 36

- 3 -

C.F.R. §§ 800.3-800.13.  Alternatively, it can develop and implement a programmatic agreement between the agency and the affected parties spelling out how the parties will address the expected adverse effects of the project.  See 36 C.F.R. § 800.14(b).

In this case, the Tribe foresaw that a proposed I-95 bridge replacement project in Providence, Rhode Island, overseen by the Federal Highway Administration, would adversely affect the Providence Covelands Archaeological District, a historic property under the NHPA and a site of importance to the Tribe.  The Tribe, the Federal Highway Administration, the Rhode Island Department of Transportation ("RIDOT"), and two historic preservation agencies (the federal Advisory Council on Historic Preservation and the Rhode Island Historical Preservation and Heritage Commission) reached an agreement signed by all parties in 2011 and amended in 2013.[1]  As mitigation for the expected negative impact of the bridge renovation on the Providence Covelands Archaeological District, RIDOT agreed to give the Tribe three parcels of land.

When it later came time to transfer the parcels to the Tribe, the state insisted that the Tribe waive any claim of

---

[1]  In this opinion, we refer to the Federal Highway Administration and the federal Advisory Council on Historic Preservation as the "federal defendants."  We refer to RIDOT and the Rhode Island Historical Preservation and Heritage Commission as the "state defendants."

- 4 -

sovereign immunity on those lands and agree that Rhode Island civil and criminal laws apply. The Tribe refused. After unsuccessful efforts to resolve the dispute in accordance with the terms of the agreement, the Federal Highway Administration and RIDOT terminated the agreement in its entirety. This left the Federal Highway Administration to follow the standard NHPA process to meet its statutory obligation. See 36 C.F.R. § 800.3-800.13 (requiring, e.g., identification of historic properties, assessment of adverse effects, and consultation with designated parties).

The Tribe subsequently filed suit in federal district court alleging breach of contract (count III) and seeking declaratory and injunctive relief (counts I and II, respectively). The Tribe sought both a declaration that the agreement remains in effect and a court order directing RIDOT to transfer the properties to the Tribe in accordance with the Tribe's interpretation of the agreement.

The district court granted the various defendants' motions to dismiss the case. As to the federal defendants, the district court concluded that none of the three statutes identified in the complaint -- the Declaratory Judgment Act, 28 U.S.C. § 2201, the Administrative Procedure Act, 5 U.S.C. § 701 et seq. ("APA"), and the NHPA -- waived the federal government's sovereign immunity to the Tribe's claims. Narragansett Indian Tribe v. R.I. Dep't of Transp., No. 17-125 WES, 2017 WL 4011149, at *3 (D.R.I. Sept. 11,

2017). That ruling left the question of whether the district court also lacked subject matter jurisdiction to hear the claims involving the state defendants. Reasoning that the APA provides no cause of action against state agencies and that the Declaratory Judgment Act does not itself confer federal subject matter jurisdiction, the district court proceeded to assess whether the NHPA provides a federal cause of action against the state defendants. Id. at *4. Recognizing a lack of circuit precedent on the question and relying on guidance from the United States Supreme Court that "[s]tatutes that focus on the person regulated rather than the individuals protected create 'no implication of an intent to confer rights on a particular class of persons,'" Alexander v. Sandoval, 532 U.S. 275, 289 (2001) (quoting California v. Sierra Club, 451 U.S. 287, 294 (1981)), the district court reasoned that the NHPA provides no private right of action, as it solely regulates federal agencies. Narragansett Indian Tribe, 2017 WL 4011149, at *4. Thus, the district court concluded, the Tribe alleged no basis to support the court's exercise of jurisdiction. Id. at *5.

## II.

The first issue posed on appeal is whether the federal government has waived its sovereign immunity so as to allow the Tribe to bring its claims against the federal defendants. In ordinary course, one might have expected the Tribe to rely on the

waiver of sovereign immunity contained in the Administrative Procedure Act, 5 U.S.C. § 702.  The Tribe, however, deems that waiver "too limit[ed]" for its purposes.  The Tribe therefore rests its challenge to federal sovereign immunity upon a single, quite different argument:  It contends that the NHPA itself implicitly creates a private right of action that is broad enough to encompass the claims that the Tribe seeks to press against the federal government, and that the creation of such a cause of action necessarily waives the federal government's sovereign immunity in connection with the bringing of such a suit.  For the following reasons we reject such an argument.

**A.**

We have previously assumed, without deciding, that the NHPA creates some type of private right of action.  See Warwick Sewer Auth., 334 F.3d at 166 n.4.  Such an assumption subsequently became more tenuous in the wake of the Supreme Court's decision in Sandoval, 532 U.S. at 289 (casting doubt on whether statutory language that "focus[es] on the person regulated . . . [or] the agencies that will do the regulating" "rather than the individual[] protected" can create by implication a private right of action to enforce those dictates).  The only two courts of appeals to have since considered whether Congress created by way of the NHPA a private right for individuals to enforce the Act have found that it did not.  See Karst Envtl. Educ. & Prot., Inc. v. EPA, 475 F.3d

1291, 1295 (D.C. Cir. 2007); San Carlos Apache Tribe v. United States, 417 F.3d 1091, 1099 (9th Cir. 2005); see also Coal. of Concerned Citizens To Make Art Smart v. Fed. Transit Admin. of U.S. Dep't of Transp., 843 F.3d 886, 901 (10th Cir. 2016) (noting in dicta that plaintiffs' claims arose under the APA because the NHPA provides no private right of action). And one circuit court that previously held otherwise has questioned its pre-Sandoval ruling. See Friends of St. Francis Xavier Cabrini Church v. FEMA, 658 F.3d 460, 466 n.2 (5th Cir. 2011) ("[T]he Supreme Court's recent jurisprudence casts serious doubt on the continued viability of the private right of action under the NHPA.").

The NHPA, though, does have a section authorizing a successful litigant to recover attorneys' fees "[i]n any civil action brought . . . to enforce this division," 54 U.S.C. § 307105, so perhaps our prior assumption that it creates some type of private right of action is not so tenuous. In any event, we can continue to indulge this assumption, again without passing on its correctness, because the Tribe in its complaint does not purport to bring any claim to enforce the NHPA. Indeed, the Tribe does not even allege any violation of the NHPA.

Rather, the Tribe in this case brings a breach of contract claim against RIDOT for allegedly not complying with the programmatic agreement, and otherwise seeks an injunction enforcing the agreement wrapped in a declaration that the agreement

- 8 -

is enforceable. In its twenty-page brief on appeal, the Tribe never even mentions any violation of the NHPA by the federal defendants. Neither the complaint nor the brief alleges that the Federal Highway Administration is not properly taking into account the effects of any federal undertaking in Rhode Island as to any historic property. Rather, the Tribe trains its cause of action on an allegation that RIDOT has breached promises it made in a programmatic agreement that the Federal Highway Administration brokered and then terminated when the parties could not mediate a disagreement on how to implement the agreement.

Even the attorneys' fees clause that the Tribe says implies the creation of a cause of action refers only to actions to enforce the NHPA. And while we are willing to assume without deciding that that clause implies the creation of such a cause of action, in light of Sandoval we see no basis to stretch further to find that the NHPA creates causes of action that go beyond enforcing the terms of the Act. The NHPA itself says nothing about programmatic agreements. See 54 U.S.C. § 306108. The implementing regulations merely describe the concept of programmatic agreements and sketch out bare procedural requirements. See 36 C.F.R. § 800.14 (b) & (f) (establishing programmatic agreements as an alternative means for federal agencies to satisfy their statutory obligation and creating minimal procedural requirements for them). Nothing in the regulations requires a federal agency to enter into

such an agreement.  And nothing in the regulations prevents the agency from terminating such an agreement.  In short, this is not an action to enforce the statute, nor is it even an action to enforce a regulation.  Rather, it is an attempt to require the federal defendants to participate as parties in a suit in district court arising out of RIDOT's alleged breach of a contract.  Nothing in the statute, either expressly or implicitly, waives the federal government's sovereign immunity to such a suit.

**B.**

As for the claims against the state agencies, we agree that the complaint lacks any basis for federal subject matter jurisdiction.  The APA provides no federal footing for a cause of action against state actors.  Town of Portsmouth, R.I. v. Lewis, 813 F.3d 54, 64 (1st Cir. 2016).[2]  Nor does the Declaratory Judgment Act confer subject matter jurisdiction; the nature of the underlying dispute must provide the basis for the claim to be heard in federal court.  Ernst & Young v. Depositors Econ. Prot. Corp., 45 F.3d 530, 534 (1st Cir. 1995).  Here, the claim is for breach of contract between parties who are not citizens of different states.  See Ninigret Dev. Corp. v. Narragansett Indian Wetuomuck Hous. Auth., 207 F.3d 21, 27 (1st Cir. 2000) (tribes are generally

---

[2] A state agency delegated authority pursuant to federal law to fulfill a federal obligation may present a different case, one we do not encounter today.

- 10 -

considered not to be citizens of any state, and they destroy complete diversity of parties for purposes of 28 U.S.C. § 1332). Although the purported contract arose under the auspices of the NHPA, the claim against the state agencies has no substantive basis in any of the NHPA's dictates. The NHPA is a procedural statute directed at federal agencies; it provides no toehold to seek redress against a state agency, as it requires nothing of state actors except in limited circumstances not applicable here.[3] The Tribe does not contend that any of the state defendants breached any obligations imposed on them by the NHPA, or that the NHPA subsumes its breach of contract claim. Even assuming that the NHPA provides some private right of action, we would still have no basis to judge the legality of the state defendants' actions absent some claim that the NHPA also imposed on them a duty that they breached, as was the case in Warwick Sewer Authority. 334 F.3d at 162 (assuming without deciding that the NHPA provides a private right of action to enforce the NHPA's requirement of consultation with the tribe against the local agency). Here, the Tribe asserts that RIDOT breached a duty it assumed only through the agreement entered into as a way for the Federal Highway Administration to meet its statutory obligation to "take into account" the effect of

---

[3] An NHPA regulation allows the head of the federal agency involved in the project to delegate responsibility for compliance with the NHPA to a state, local, or tribal government. 36 C.F.R. § 800.16(k) (defining "head of the agency").

the I-95 project on the historic site. 54 U.S.C. § 306108. There is no claim that the state defendants violated the NHPA.

The Tribe invokes Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308 (2005) to argue that the breach of contract claim nevertheless "arises under" federal law for jurisdictional purposes because the agreement stems from the NHPA process. Grable, though, stands for the notion that in rare instances, a state law cause of action (like breach of contract) can form the basis for federal "arising under" jurisdiction if the claim necessarily states a federal issue, which is actually disputed and substantial, and if a federal forum may entertain the claim "without disturbing any congressionally approved balance of federal and state judicial responsibilities." Id. at 312–14. The Grable factors counsel against finding federal question jurisdiction here. Because the Tribe does not claim that RIDOT owed and breached any obligations imposed by the NHPA or any other federal law, there is no federal issue stated, let alone one that is actually disputed and substantial. The NHPA does not tell us whether the state agencies entered into a valid contract. Nor does the NHPA explain whether RIDOT breached any duty assumed thereunder. Against a properly waged breach of contract claim in state court, the state defendants might counter that the Federal Highway Administration terminated the agreement, and thus no contract remains. Understanding the validity of the contract might

therefore require the court to understand that a federal agency can meet its NHPA obligations either by developing and implementing a programmatic agreement or by following the standard "section 106" process set forth in 54 U.S.C. § 306108 and its implementing regulations, 36 C.F.R. §§ 800.1–800.16.  But the mere fact that a claim or defense requires an explanation of a federal statutory scheme as background does not mean that a complaint "necessarily raise[s] a stated federal issue."  Grable, 545 U.S. at 314.

The disputed federal issue would have to be more apparent and substantial than it is here in order to say that a breach of contract claim against a state can form the basis of federal "arising under" jurisdiction.  See, e.g., One & Ken Valley Hous. Grp. v. Maine State Hous. Auth., 716 F.3d 218, 224 (1st Cir. 2013) (dispute sufficiently arose under federal law because it involved federal contractor's implementation of a federal program in which contracts at issue were drafted and approved by a federal agency and signed by a federal official and the claim was that the federal contractor breached by following a guideline promulgated by a federal agency pursuant to a federal statute); Rhode Island Fishermen's All., Inc. v. Rhode Island Dep't Of Envtl. Mgmt., 585 F.3d 42, 52 (1st Cir. 2009) (lobstermen could challenge in federal court a Rhode Island lobster-trap allocation statute that made exercise of state agency authority dependent on federal law, requiring interpretation of federal law).  The disputed questions

-- such as whether the state could bind itself in the manner alleged, whether it did bind itself by signing the programmatic agreement, or whether it waived sovereign immunity when it did so -- are all questions of state law best left for the courts of Rhode Island.

## III.

We _affirm_ the dismissal of the Tribe's complaint.