NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0422n.06

Case No. 18-2385

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Aug 14, 2019
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| JEFFREY FRIED and NANCY GUCWA, Full Co-Guardians of Mark Marusza, | ) ) ) | |
| Plaintiffs-Appellants, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR |
| v. | ) ) | THE EASTERN DISTRICT OF MICHIGAN |
| DONNA PARHAM SANDERS and ACCIDENT FUND INSURANCE COMPANY OF AMERICA, | ) ) ) ) | |
| Defendants-Appellees. | ) ) | |

BEFORE: COLE, Chief Judge; SILER and CLAY, Circuit Judges.

**SILER**, Circuit Judge. Jeffrey Fried and Nancy Gucwa, both co-guardians of Mark Marusza, appeal an order of the district court dismissing with prejudice their claim for intentional infliction of emotional distress ("IIED") and remanding their remaining state law claims to Wayne County Circuit Court. Because the district court lacked jurisdiction, its order is **REVERSED** and the case is **REMANDED** to the district court with instructions to dismiss all claims without prejudice.

I.

Marusza was hit by a vehicle while on the job in 2011. He sustained a traumatic brain injury, broken bones, and damage to his shoulders and spine. Following the accident, he was no

longer able to work, required attendant care, and took on a pseudobulbar affect, often manifesting in aggressive or inappropriate behavior toward other people.

Accident Fund Insurance Company of America insured Marusza's employer for Michigan workers' compensation benefits. Accident Fund has paid for some, but not all, of Marusza's treatment since the accident. Defendant Donna Parham Sanders is the principal adjuster of Marusza's claim at Accident Fund.

In 2015, Marusza and Gucwa sued Accident Fund and its employees. They alleged that the insurance company defrauded them in violation of the Racketeer Influenced and Corrupt Organizations ("RICO") Act; that doctors hired by Accident Fund tortiously interfered with Marusza's contractual relationship with Accident Fund; that Accident Fund falsely imprisoned Marusza by requiring him to attend an examination with a neuropsychologist; and that they were entitled to double damages under the Medicare Secondary Payer Act. *Gucwa v. Lawley*, 731 F. App'x 408, 410 (6th Cir. 2018). This court upheld the district court's dismissal of that complaint. *Id.*

Meanwhile, Marusza also sought help from the Michigan Workers' Compensation Agency. In 2016, the Agency issued an "open award" of benefits to Marusza. The award entitled him to four hours of attendant care per day, case management, and medication prescribed by his doctors for mental and physical injuries.

In 2017, the guardians brought this lawsuit in Wayne County Circuit Court against Accident Fund and Sanders (collectively, "Accident Fund"). The complaint alleges three claims: (1) IIED under Michigan law, based in part on violations of federal law, (2) failure to timely pay under Michigan Compiled Law § 500.2006, and (3) for enforcement of a final order of the workers' compensation agency. Accident Fund removed the case to federal court, alleging federal question

jurisdiction. It argued the first amended complaint "alleg[ed] liability against defendants and entitlement to relief and damages pursuant to federal law, including 18 U.S.C. §§ 1341 and 1343 (mail and wire fraud), and 18 U.S.C. § 1960, et seq. ([RICO])."

Once in federal court, plaintiffs twice attempted to amend their complaint, once to delete reference to federal law violations, and again to strengthen their allegations of IIED. Plaintiffs also argued the district court had no jurisdiction and the case should be remanded. The district court denied leave to amend the complaint, dismissed with prejudice plaintiffs' IIED claim, and remanded the remaining two claims to state court. Plaintiffs appeal.

## II.

A defendant who removes a case pursuant to 28 U.S.C. § 1441(b) must demonstrate that "the case as pled falls within the federal question jurisdiction of the district court." *Warthman v. Genoa Twp. Bd. of Trs.*, 549 F.3d 1055, 1061 (6th Cir. 2008). Decisions of the district court concerning its subject-matter jurisdiction that raise pure questions of law are reviewed de novo; when jurisdictional decisions are based on resolution of factual disputes, those findings are reviewed for clear error. *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 560 (6th Cir. 2007).

## III.

In the absence of diversity jurisdiction, which is not applicable, Accident Fund may remove this case to federal court if it could have been brought there originally. *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). That is: the case may be removed to federal court if the plaintiffs' allegations "aris[e] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. This is most obviously satisfied when litigants proceed under a federal cause of action. *Grable*, 545 U.S. at 312.

But the Supreme Court has recognized "another longstanding, if less frequently encountered, variety of federal 'arising under' jurisdiction"—claims that arise under state law, but nonetheless implicate a substantial federal issue. *Id.* This is a "special and small category" of claims. *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006). To qualify, a state law claim must contain a federal issue that is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013); *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 568 (6th Cir. 2007).

The district court found that plaintiffs' allegations regarding federal law were at the "core" of plaintiffs' IIED claim but did not explicitly analyze the multi-part test set out by the Supreme Court. On appeal, Accident Fund argues plaintiffs' IIED claim satisfies the test. Plaintiffs argue it does not and must be remanded to state court along with the other claims. Plaintiffs are correct.

*A. Necessarily Raised and Actually Disputed*

It is not clear whether the federal issues in the complaint are actually disputed. After all, plaintiffs have requested leave to amend their complaint to eliminate all allegations that Accident Fund violated federal law. And after removal in this case, the underlying RICO claim was litigated and dismissed in a separate suit in federal court. *Gucwa v. Lawley*, 731 F. App'x 408, 412 (6th Cir. 2018).

But even assuming dispute, the federal issues are not necessary to plaintiffs' IIED claim. To prove IIED under Michigan law, plaintiffs must show: (1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress. *Roberts v. Auto-Owners Ins. Co.*, 374 N.W.2d 905, 908 (Mich. 1985). Plaintiffs' complaint alleges these elements are met by a number of actions by Accident Fund, most of which are not related to federal law:

- "Defendants at times in 2012 refused to pay for attendant care though they had no medical evidence Marusza did not need care . . . This was an intentionally wrongful act inflicting severe emotional distress on Marusza."

- "Defendants refused to pay for treatment by Meythaler, refused to pay for Neudexta or propranolol, and refused to pay for attendant care."

- "Defendants acted dishonestly or with reckless disregard of the truth, and or willful blindness to the truth" concerning the reports of Dr. Baker and Dr. Ager, including failing to the give the doctors relevant medical records, failing to review inconsistencies in the reports after the errors were made known, and continuing to deny benefits after incidents showed Marusza to be a danger absent treatment.

- "Defendants continuously refused to admit that [Marusza] suffered from TBI [and] needed treatment and medication" despite receiving Dr. Meythaler's regular reports confirming the need each year from 2012 through 2016.

- "Defendants['] refusal to pay for nurse case management in 2016 and 2017 was an outrageous and reckless act . . . ."

- "[Defendants'] refusal month after month and year after year **before** the hearing to pay for Nuedexta, for other medications and treatment for Mark Marusza's TBI and other injuries, and for attendant care and nurse case management, was outrageous, intentional, reckless and or the product of willful blindness, as was their refusal to pay for increased attendant care and nurse case management **after** the magistrate's decision . . . Defendants' acts inflicted severe emotional distress on Mark Marusza."

It is only after recitation of these allegations and beginning on page twenty-four of the complaint that plaintiffs touch on federal law. The complaint states "[t]he commission of mail and or wire fraud which inflicts severe emotional distress is the commission of the tort of intentional infliction of emotional distress." And the complaint alleges "Defendants committed mail and wire fraud in a pattern of racketeering which violated [RICO], 18 U.S.C. § 1960, et seq, [and the violation] inflicted severe emotional distress on Mark Marusza."

According to the complaint, violations of federal law are proof of certain elements of plaintiffs' IIED claim. But they are not the only proof—the complaint details numerous actions by defendants having nothing to do with federal law, but which are alleged as a basis for their IIED claim. The federal issue is therefore not a necessary element of the claim. After all, plaintiffs may

win or lose regardless of whether defendants violated federal law; such a connection is more tenuous than what has previously made a federal issue necessarily raised. *Gunn*, 568 U.S. at 259 (causation element of state malpractice claim required application of federal patent law to prevail); *Grable*, 545 U.S. at 315 (whether IRS gave adequate notice as defined by federal law was "the only legal or factual issue contested in the case"); *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 807 (1986) ("Because the jury could find negligence on the part of Merrell Dow without finding a violation of the FDCA, the plaintiffs' causes of action did not depend necessarily upon a question of federal law.") (quoting Sixth Circuit opinion below); *Mikulski*, 501 F.3d at 569 ("The plaintiffs have certainly staked their [state law] claim on this federal [tax accounting] issue.").

*B. Substantial*

Nor are the federal issues substantial. This court has previously explained that four aspects, among others, affect an embedded federal issue's substantiality:

> (1) whether the case includes a federal agency[;] (2) whether the federal question is important (i.e., not trivial); (3) whether a decision on the federal question will resolve the case (i.e., the federal question is not merely incidental to the outcome); and (4) whether a decision as to the federal question will control numerous other cases (i.e., the issue is not anomalous or isolated).

*Mikulski*, 501 F.3d at 570.

Here, these aspects weigh against federal jurisdiction. There is no federal agency in the case. Nor is the federal issue particularly important. To frame importance, "[t]he substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system." *Gunn*, 568 U.S. at 260. Accident Fund has identified no such issue. It is true that Congress created a private cause of action under RICO and the federal courts have some interest in delineating its contours. But that alone does not show substantiality. The Supreme Court has "disclaimed the adoption of any bright-line rule[s]" in this area of the law, instead emphasizing the importance of tailored,

careful considerations. *Grable*, 545 U.S. at 317. Here, plaintiffs have already tried and failed under the RICO statute in federal court—this court has already weighed in on the contours of the private cause of action as it relates to these facts. *Gucwa*, 731 F. App'x 408. According to Accident Fund and the district court, all that remains is to apply preclusion principles. There is no reason to believe such application is important to the federal system or will control numerous other cases going forward.

Finally, and as discussed previously, the alleged federal violations offer only *some* support for plaintiffs' IIED claim and deciding the federal issues will not resolve the claim. The elements required for the federal violations are not the same as those required for IIED, and a decision in favor of plaintiffs will not end their proof. *Compare Roberts*, 374 N.W.2d at 908, *with Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985). If, on the other hand, the issues are decided in favor of Accident Fund, plaintiffs will presumably continue forward, attempting to prove IIED from the multiple pages of other allegations in their complaint.

   *C. Capable of Resolution Without Disruption*

As this court has said previously: "[b]oth *Grable* and *Merrell Dow* noted that allowing federal jurisdiction over typical negligence claims that implicated issues of federal law could dramatically increase the volume of federal litigation over state-law claims." *Mays v. City of Flint*, 871 F.3d 437, 450 (6th Cir. 2017). Plaintiffs' IIED claim sounds in state tort law. In addition, Michigan's role in policing its workers' compensation scheme and delineating the contours of its IIED cause of action is significant. *See, e.g.*, *Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*, 731 F.3d 556, 568 (6th Cir. 2013) (noting that workers' compensation schemes "supplant a body of law that has always been within the domain of the states' police powers"). This court has previously noted that IIED claims implicate complex aspects of Michigan law, IIED claims have

been ruled on differently by Michigan courts, and the Michigan Supreme Court has been hesitant to recognize it as a formal cause of action. *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006). Finally, to the extent federal law arises on remand, Michigan courts are competent to apply it. *Mikulski*, 501 F.3d at 574 (citation omitted).

For good reason, this court has been hesitant to federalize state workers' compensation disputes in the past, and this is another attempt we must avoid. S*ee, e.g.*, *Jackson*, 731 F.3d at 568 ("The plaintiffs' reading of RICO would dramatically alter the proper distribution between state and national governments of police authority . . . by making federal courts an alternative forum for workers' compensation disputes." (citation omitted)).

## IV.

Because the district court lacked jurisdiction, its order is **REVERSED**. The case is **REMANDED** to the district court with instructions to dismiss all claims without prejudice.